## STATE v. HOBEN.

No. 1979.  Decided June 15, 1909 (102 Pac. 1000).

1. WITNESSES—PRIVILEGED COMMUNICATIONS—WAIVER. The privilege given by Comp. Laws 1907, section 3414, subd. 2, providing that an attorney cannot, without the consent of his client, be examined as to any communication made by the client, is the privilege of the client, who may claim or waive it, and where he waives it the attorney cannot claim it. (Page 197.)

2. WITNESSES — PRIVILEGED COMMUNICATIONS — WAIVER. A client who testifies to conversations with his attorney as to matters privileged under Comp. Laws 1907, section 3414, subd. 2, waives the privilege, and cannot thereafter claim it when the attorney is called to impeach him. (Page 198.)

3. WITNESSES — PRIVILEGED COMMUNICATIONS — PUBLIC OFFICER. Comp. Laws 1907, section 3414, subd. 5, providing that a public officer cannot be examined as to communications made to him in official confidence, where the public interests would suffer by the disclosure, relates especially to matters pertaining to the affairs of the state or nation or concerning state secrets, and to communications by informers to public officials, and the evidence is excluded because the public safety is best subserved thereby. (Page 198.)

4. WITNESSES—PRIVILEGED COMMUNICATIONS—WAIVER. Where the state in a criminal case invites a disclosure of matters privileged within Comp. Laws 1907, section 3414, subd. 5, and acquiesces in such disclosure so long as the matter disclosed is against accused, the state cannot exclude other disclosures sought to be shown by accused. (Page 200.)

5. RAPE—EVIDENCE—CORROBORATION. Corroboration of the testimony of the prosecutrix on a trial for rape on a female under the age of eighteen years is not necessary to warrant a conviction. (Page 200.)

6. CRIMINAL LAW—TRIAL—INSTRUCTIONS. The jury must follow the instructions of the court, whether right or wrong. (Page 201.)

7. CRIMINAL LAW—PRELIMINARY EXAMINATION—WAIVER. A preliminary examination, guaranteed by the Constitution to one charged with crime, before the filing of the information against him, may be waived only by the consent of accused and the state. (Page 201.)

8. RAPE—TIME—INFORMATION—VARIANCE. Time is not a material ingredient of rape on a female under the age of consent, and it is not essential that it should be precisely stated in the information, and evidence of the commission of an offense on a date other than and prior to that alleged is competent. (Page 202.)

9. INDICTMENT AND INFORMATION—VARIANCE—TIME OF COMMISSION OF OFFENSE. Where time is not an essential ingredient of the offense charged, the state is not required to prove the offense alleged or the transaction out of which it arose at the particular time stated in the information, and may prove the transaction at another and prior time within the statutory period of limitations. (Page 202.)

10. CRIMINAL LAW—PRELIMINARY EXAMINATION—INFORMATION. The preliminary examination on a complaint charging accused with rape on April 1st on a female under the age of consent was confined to evidence of rape on that date. The information charged the offense on that date. The state on the trial showed that

accused had sexual intercourse with prosecutrix on April 1st, as charged, and that she became pregnant. The proof showed that the prosecutrix was then over eighteen years of age, and the state introduced evidence that accused had had intercourse with her prior thereto and before she became 18. *Held*, that a conviction could not be sustained because accused had not had a preliminary examination relating to the offense committed before prosecutrix became eighteen. (Page 203.)

11. CRIMINAL LAW—EVIDENCE—ELECTION. The information charged accused with rape on April 1st on a female under the age of consent. The state opened its case with proof of an offense committed on that date, and directed nearly all its evidence to that offense and to the transaction connected therewith. On the evidence showing that prosecutrix was over eighteen years of age on that date, the state offered evidence of intercourse with prosecutrix before she reached that age. *Held* that, as the state elected to rely on the offense committed on April 1st, a conviction could not be sustained on the evidence showing rape on prosecutrix before she reached the age of consent.[1]  (Page 203.)

APPEAL from District Court, Third District; *Hon. George G. Armstrong,* Judge.

Defendant was convicted of felony and appeals.

REVERSED AND REMANDED.

*H. J. Robinson, J. M. Hamilton,* and *A. J. Weber* for appellant.

*A. R. Barnes,* Attorney-General, for the State.

STRAUP, C. J.

The defendant was convicted of the crime of having carnal knowledge of a female under the age of eighteen years. In the information charging the offense it is averred that the defendant, "having been duly committed to this court" by a committing magistrate "to answer to this charge, is accused," by the district attorney, of the crime above stated, as follows:

---

[1] State v. Jensen, 34 Utah 166, 96 Pac. 1085.

"That the said Martin F. Hoben, on the 1st day of April, 1906, at the County of Salt Lake, in the State of Utah, in and upon one Edna Thomas, a female over the age of thirteen years, and under the age of eighteen years, to wit, of the age of seventeen years, she, the said Edna Thomas, being then and there an unmarried female, unlawfully and feloniously an assault did make, and the said Martin F. Hoben did then and there unlawfully and feloniously have carnal knowledge of and sexual intercourse with the said Edna Thomas."

It is made to appear that at the preliminary examination the prosecutrix and her mother both testified that the prosecutrix was born on the 21st day of November, 1888, and that she was only seventeen years of age when the offense, on the last of March or the 1st of April, 1906, as alleged in the complaint, was committed. The prosecutrix there testified that she became pregnant as a result of such sexual intercourse with the defendant, and that the child was born on the 7th day of January, 1907. No evidence, at the preliminary examination, of any offense was given, except the one committed the last of March or the 1st of April, 1906, when the prosecutrix, as there testified to by her, became pregnant. She there testified that such time was the first occasion when the defendant had sexual intercourse with her. Upon the complaint charging the defendant with having committed the offense at that time, and upon the evidence adduced before the committing magistrate with respect to that offense and transaction, and none other, the defendant was held to the district court. After the information was there filed against him, he took the depositions of certain witnesses in the state of Iowa, where the prosecutrix was born, and where she and her mother had formerly resided. The depositions included the evidence of the official records of births, the testimony of the physician and the nurse who attended the prosecutrix's mother in confinement, the testimony of the prosecutrix's grandmother, and other witnesses. The evidence, as disclosed by the depositions, clearly showed that the prosecutrix was born November 21, 1887, and that when she had sexual intercourse with the defendant, the last of March or the 1st of April, 1906, as testified to by her, she was more than eighteen years of

age. One set of depositions was received and published on the day of the trial, but before the trial commenced. There is some dispute in the record as to whether the depositions, after they were received and published, were seen or read by the prosecutrix prior to the giving of her testimony in the district court. The district attorney testified that he did not read nor communicate to her any of the contents of the depositions; that when the direct interrogatories to take the depositions were served upon him he read those to her and the names of the witnesses, and interrogated her concerning the matters inquired about, to enable him to prepare cross-interrogatories. The prosecutrix, however, did not even then make known to the district attorney her correct age. She admitted on the witness stand that she concealed the real fact of her age from him until the morning of the trial, and testified that she then told him her correct age, that she became eighteen years of age on the 21st day of November, 1905, and that she then also informed him for the first time that the defendant first had sexual intercourse with her along about the 1st of November, 1905. No opening statement of the case was made to the jury by the district attorney. After the jury was impaneled and the trial begun, the prosecutrix, the first witness for the state, took the witness stand with the child on her lap. After a few preliminary questions had been asked her concerning her residence and parents, and after testifying that she was a telephone operator at Bingham Canyon, she was asked: "Who is the mother of this child which you hold in your lap?" She answered that she was. She then, in response to questions asked her by the district attorney, testified that the defendant was the father of the child; that she had sexual intercourse with him the last of March or the 1st of April, 1906; and that, as the result of such intercourse, she became pregnant, and that the child was born January 7, 1907. She then also testified that she was born on the 21st day of November, 1887 (not 1888, and as disclosed by the testimony of the witnesses in the depositions), and that she became eighteen years of age on the 21st day of

November, 1905, and hence she was more than eighteen years of age when the defendant had sexual intercourse with her on the 1st of April, 1906, and when she became pregnant.

After having identified the offense and transaction in such manner, the district attorney then asked the prosecutrix when she first had sexual intercourse with the defendant. She answered: "Somewhere along the first part of November, 1905." She testified that the intercourse took place at or about a "headhouse" or a shed, on her return with the defendant from a masquerade ball in Bingham Canyon. The district attorney then asked her, and she answered as follows:

"Q. Now, Edna, I want to ask you this question: If you gave any other (age) at any time? I just want you to tell the plain facts about this. If you gave any other age as your right age at any time? A. Why, I didn't at first tell. I was told to do that, and I did give a different age. Q. I want you to tell the jury just what the facts are with relation to any other statement or any other testimony you have given. A. Why, I was instructed to say that I was younger. I don't know if it would be right to give the one who told me. Q. State just what was said, and the circumstances. I want the plain facts. A. Well, the attorney we had (naming him) he wanted me to say that I was younger than I was; that I wasn't eighteen the first time I had intercourse with Hoben; that it would make it stronger to say that I was a year younger. Q. Did you so testify? A. I did; yes. Because I thought he knew; he was brighter than I was; I did as he told me; he told me to do it, and I did. Q. Was that in the preliminary examination in this case? A. Yes, it was. Q. And that statement was true or false? A. It was false. Q. The statement you then made? A. It was false, yes. And what I am telling now is true."

The district attorney then examined her at some length with respect to communications and transactions had with the defendant relating, not to the offense committed about the first part of November, 1905, but to the offense committed on the 1st day of April, 1906, and to transactions had subsequently thereto, and especially relating to her pregnant condition. She also testified, in response to questions asked her by the district attorney, that the defendant

wanted her to submit to a surgical operation to produce an abortion; that she went to a doctor to whom the defendant had directed her; that she reported to the defendant that the doctor refused, and advised her to let the child be born and to raise it the best way she could, and never to permit an abortion to be performed; that the defendant only laughed and sneered at her; that at another time when she was far along in pregnancy he urged her to go to a specialist to have an abortion performed; that she declined to do so, and that he, in anger, struck her in the face; that she and the defendant had been engaged to be married, and that she begged him and pleaded with him to marry her and protect her name and that of the child, and that the defendant only laughed in her face, treated her with contempt, and rudely pushed her away; that he went with another girl, and did other things to tantalize and annoy her; that after he was arrested he sought her and requested her to sign a paper to the effect that he was not the father of the child, and that, if she would do so and withdraw the charge against him, he would agree to support the child; that she declined to do this, and from thence on the defendant annoyed, maligned, and ill treated her. On cross-examination she testified that when she and her mother went to the committing magistrate to make the complaint, which was after the child was born, the justice explained to her and her mother that, if the prosecutrix was eighteen years of age or over when the sexual intercourse with the defendant was had, the offense constituted fornication, and was punishable only by a jail sentence or a fine, but if she was under eighteen the offense was a felony and punishable by imprisonment in the penitentiary. She further testified that the first complaint filed with the magistrate, and which was signed by her mother, charged the defendant with the crime of fornication; that later a complaint, also signed by her mother, was filed charging the defendant with a felony. The only difference in the complaints was that in the latter it was alleged that the prosecutrix was only seventeen years of age at the time of the commission of the offense. In each the

crime was charged as having been committed on the 1st day of April, 1906. She further testified that the complaint was changed, and that she, at the preliminary examination, testified that she was only seventeen years of age on the 1st day of April, 1906, and that she was born November 21, 1888, because the private attorney employed by her mother and herself told her that she would have to make herself one year younger than she was in order to properly punish the defendant. She also testified that she did not tell her counsel, nor the county attorney, nor his assistant, nor the district attorney (until the morning of the trial in the district court) that she had had sexual intercourse with the defendant at any time prior to the last of March or the 1st of April, 1906. She testified that at the preliminary examination the district attorney, who also attended and took part in such examination, "asked about my age, and the first time I had to do with Hoben; I told him the first time was March, the last of March or the 1st of April, 1906; I said I was a year younger." She was then asked on cross-examination that if it were true that she had had sexual intercourse with the defendant about the 1st of November, 1905, why she did not inform her attorney of such fact, and thus make it unnecessary to give false testimony concerning her age in order to charge and prove a case of felony against the defendant. She answered that she did not want to make it appear to her counsel that she was "so easy" and "so soft" as to yield to the defendant's desires on so short an acquaintance with him, and that the reason she had not earlier told the district attorney the truth concerning her age was because her counsel had told her not to do so. She also testified that when the district attorney, about thirty days before the trial, read to her the proposed direct interrogatories to take the depositions, or whatever it was that he read to her, the evidence being somewhat confusing on that subject, in response to a question asked her, "Did he (the district attorney) refer to the fact that there was evidence that you were born a year later" (earlier)? that "he didn't give any

evidence at all; he had nothing to show, but he did, as I said yesterday, have questions and no answers—you folks (referring to the defendant and his counsel) had no evidence at that time whatever, as far as I could find out from" the district attorney. The witness when being cross-examined, not responsively to any questions asked her, but voluntarily, referred to her private counsel and to some of the defendant's counsel as "barroom lawyers," and to the defendant as a "cur," and a "thing," and testified that he was a forger and had forged divers checks, and had been in numerous "scrapes," but had always "wiggled" out of them, and that he was a man of general bad character and ill repute.

The only other witness who testified on behalf of the state was a young man who stated that there was a rumor about the smelter, where he and the defendant were employed, that he, the witness, was the father of the child born to the prosecutrix, and that the defendant, after he had been arrested and pleaded not guilty to the charge, came to him and admitted that he, the defendant, was the father of the child.

The defendant showed by several witnesses that the masquerade ball referred to by the prosecutrix was on Thanksgiving evening, 1905; that the prosecutrix was at the dance, and appeared in an Indian costume; that the defendant, on that occasion, left his room and went to the dance with the witnesses, or some of them, and that he returned with them and retired for the night; and that he did not accompany the prosecutrix to or from the dance. The defendant also called the prosecutrix's private counsel, who testified that he had no connection with the case, and had not seen the prosecutrix nor her mother until after both complaints had been filed before the committing magistrate; that the prosecutrix told him she was born November 21, 1888, and that the first time she had sexual intercourse with the defendant was the last of March or the 1st of April, 1906, and that she then was not eighteen years of age; that he did not advise her, nor suggest to her, to falsify her age,

and that, if she had been born at the time she told him she
was, she clearly was under eighteen years of age when the
offense charged in the complaint was committed. The prose-
cutrix's mother was not called by the state, but was called
by the defendant. She testified that the prosecutrix was
born November 21, 1887, and hence she was more than
eighteen years of age on the 1st day of April, 1906. The
depositions referred to were also read in evidence.

On the direct examination of the prosecutrix, and in
response to questions asked her by the district attorney, she
testified fully with respect to conversations had with her
private counsel relating to her age and to the giving of false
testimony before the committing magistrate. On cross-
examination she was also interrogated, and she testified
without objections, and without any claim of privilege being
made by any one, concerning conversations had with the
district attorney, the county attorney, and the assistant
county attorney with respect to her age and when she first
had sexual intercourse with the defendant. Among the
questions so asked her on cross-examination, she was asked
if she did not, at a certain time and place, state to the as-
sistant county attorney that the first time she had sexual in-
tercourse with the defendant was the last of March or the
1st of April, 1906; and "that every time that this man (the
defendant) had to do with you was after you had become
eighteen years of age?" She answered, "I never did." The
defendant called the assistant county attorney as a witness.
After he had testified that he was the assistant county at-
torney, that he had acted in such capacity in the case before
the committing magistrate, that he in no other capacity had
acted for the prosecutrix, and that he had several conversa-
tions with her with respect to the transactions there inquired
about, he was asked: "And did you ask her, among other
things, when was the first time that this man (the defend-
ant) had intercourse with her?" He answered: "I think
I asked her that." He was then asked: "And did she
answer and say to you 'about April 1, 1906,' or words to
that effect?" The witness then said, "I rather think that

is a privileged communication," and claimed the privilege. He was further asked: "I want to ask you if Edna Thomas (the prosecutrix) did not say to you," at a time and place fixed, and as theretofore propounded to her, "that the first time that this defendant ever had intercourse with her was the last of March or the 1st of April, 1906?" The witness claimed the matter privileged, and refused to answer. The court ruled that the witness need not answer.

At the conclusion of all the evidence, the court charged the jury that the statute provides that "any person who shall carnally and unlawfully know any female over the age of thirteen years and under the age of eighteen years, shall be guilty of a felony." He further charged them:

"You are instructed that, before the defendant can be convicted of the offense charged, each juror must be satisfied beyond a reasonable doubt that the offense testified to as having been committed on or about the 1st of November, 1905, and before November 21, 1905, was actually committed; the evidence as to what occurred on the other dates or times testified to can only be considered as showing intent, or as throwing light on what is claimed to have occurred about the 1st of November, 1905, and before the 21st of November, 1905. Even though the jury are satisfied that the defendant was guilty of unlawful conduct on any of the other dates or times testified to, he cannot be convicted on this trial, unless the crime alleged to have been committed on said last date, about the 1st of November, 1905, has been fully proved to your satisfaction beyond a reasonable doubt. Fornication—that is to say, where an unmarried man has sexual intercourse with an unmarried female over the age of eighteen years—is a crime under the laws of the state of Utah; but you are instructed that fornication is not charged in this complaint against this defendant. And if you should believe that the defendant is guilty of the crime of fornication—that is to say, had sexual intercourse with the complaining witness, Edna Thomas—after she had attained the age of eighteen years, you would not be permitted to find him guilty of such crime, for the reason that it is in no manner embodied within the crime charged."

The jury returned a verdict finding the defendant guilty "of the crime of having carnal knowledge of a female under the age of eighteen years, as charged in the information." A motion for a new trial was made on the grounds, among others, that the court erred in permitting the assistant

county attorney to claim the privilege and to refuse to an-
swer the questions propounded to him; and that the verdict
is against law, and is not supported by, but is contrary to,
the evidence. The motion was overruled, and the defend-
ant sentenced to a term of imprisonment in the penitentiary.
The defendant, on appeal, has presented these rulings for
review.

We think the court erred in both. The state contends
that the matters inquired of the assistant county attorney
were privileged, because of subdivisions 2 and 5, section
3414, Comp. Laws 1907. Subdivision 2 reads as follows:
"An attorney cannot, without the consent of his client, be
examined as to any communication made by the client to
him, or his advice given therein, in the course of professional
employment." Subdivision 5: "A public officer cannot be
examined as to the communications made to him in official
confidence, where the public interests would suffer by the
disclosure." The state contends though there was no em-
ployment or engagement of the witness as an attorney by
the prosecutrix, and though he was in no such sense her at-
torney, and did not represent her in such capacity, never-
theless any communication made by her to him in the ca-
pacity of a public prosecutor was privileged to the same ex-
tent, and upon the same principle, that a communication
of a client to his attorney is privileged. That may be con-
ceded. There are authorities which so hold. (Jones, Ev.
[2 Ed.], sec. 749, and cases there cited.) But if the privi-
lege falls within subdivision 2, it was the prosecutrix's privi-
lege, not the assistant county attorney's (*In re Young's
Estate,* 33 Utah 382, 94 Pac. 731, 17 L. R. A. [N. S.]
108), and was waivable. She could claim or waive
it as she saw fit. After it was waived by her, the
assistant county attorney could not claim it for
himself, under that subdivision of the section. When on
the witness stand, she, without claiming the privilege, and
without objection from any one, testified concerning com-
munications made by her to the assistant county attorney,
and denied making certain statements to him with respect

to when she first had sexual intercourse with the defendant, and as to her age at that time. The rule is well settled that, if the client himself testifies to conversations with his attorney in respect of the matters claimed to be privileged, the privilege is waived. (Jones, Ev. [2 Ed.], sec. 756.) The client may not thereafter be heard to claim the privilege when the attorney is called to impeach him, and for much stronger reasons may the attorney not be heard to claim the privilege for himself.

We also need not decide whether the matters claimed to be privileged fall within the provisions of subdivision 5 of the section. We are rather inclined to the opinion that they do not. That subdivision relates especially to matters pertaining to the affairs of the state or nation, or concerning state secrets, and communications by informers to public officials. The evidence is excluded because it would prejudice the interests of the public, and because public safety is best subserved by keeping out such evidence. (Jones, Ev. [2d Ed.], sec. 762; 2 Elliott, Ev., sec. 639; 4 Wigmore, Ev., sec. 2367.) It is indeed very doubtful if it was made to appear in what particular "the public interests would suffer by the disclosure." This subdivision, unlike subdivision 2, is not for the protection or benefit of a witness or of a party in a particular case, but the evidence is excluded upon the grounds of public policy, because of the confidential nature of such communications, when the disclosure would prejudice, in the language of the statute, "public interests." (*Worthington v. Scribner,* 109 Mass. 487, 12 Am. Rep. 736.) Though it should be conceded for the purpose of this decision that the matters inquired about were privileged under this subdivision, still the ruling was wrong, because the government itself invited the testimony and sought the disclosure. It opened the door and entered upon an inquiry concerning the very matters claimed to be privileged. The district attorney, no doubt well knowing that the testimony given by the prosecutrix at the trial in the district court, with respect to her age and to the time when she first had intercourse with the defend-

ant, was diametrically opposed to the testimony given by her at the preliminary examination, and anticipating her impeachment, and in advance endeavoring to avoid the effect of it, requested her, in her direct examination, "to tell the jury just what the facts were in relation to any other statement or any other testimony you have given; . . . state what was said and the circumstances. I want the plain facts." In giving her explanations she admitted that the testimony given by her at the preliminary examination was false, but that it was induced and suborned by her private attorney, in order to properly punish the defendant for the commission of a felony. Then, on cross-examination, she was somewhat hard pressed with the facts that the complaint, charging the defendant with a felony and of having carnal knowledge of her on the 1st day of April, 1906, and in which it was averred that she was then but seventeen years of age, had been filed before she talked with her attorney, and that she had not made known to him or to any one that the defendant had sexual intercourse with her about the 1st of November, 1905, or at any time prior to the last of March or the 1st of April, 1906, until the depositions had been received and were published, and then not until the morning of the trial. She was cross-examined at some length with respect to her knowledge of the contents of the depositions. In order that the inference might not be drawn that her testimony at the trial in the district court was induced or influenced by her knowledge of such contents, the district attorney himself testified that he did not communicate to her "any of the contents of the depositions, or any part of any answer, and, so far as I know, she never knew, and don't know now, what the contents of the depositions are"; and that all the communications he had with her relating to the depositions were had when the direct interrogatories to take the depositions were proposed and served, and that he then interrogated her in respect to the matters inquired about, to enable him to properly prepare cross-interrogatories. The state, also without objections of any kind, permitted the prosecutrix on cross-examination to tes-

tify concerning communications made by her to the district attorney, the county attorney, and to the assistant county attorney relating to her age and the time when she first had sexual intercourse with the defendant. She was permitted to freely make such disclosures, and to give her version of the communications. She denied that she disclosed to the assistant county attorney that the first time she had sexual intercourse with the defendant was the last of March or the 1st of April, 1906, or that each time she had to do with the defendant was after she became eighteen years of age. There was no doubt that there may be communications made to a public prosecutor which are privileged; and though it should be conceded that these communications were such, yet where the state, as here, invites a disclosure, and itself inquired about the matters claimed to be privileged, or permits, or acquiesces in, such inquiry, without objection, it may not have a disclosure of a part of the truth, and then be heard to assert that "public interests" will suffer if the whole truth is disclosed. In other words, the state may not permit, or acquiesce in, the disclosure so long as the matters disclosed make against the defendant, and then put a stop to it when they are to the defendant's advantage. Under the circumstances, the court ought to have required the assistant county attorney to answer the questions.

The evidence is sufficient to show that the defendant had sexual intercourse with the prosecutrix about the 1st of November, 1905, and that she was then under eighteen years of age. True, she alone testified to such a transaction. She was not corroborated in any particular. But corroboration is not necessary to warrant a conviction in such case. The court charged the jury that the offense testified to as having been committed between the 1st and 21st of November, 1905, was the only offense of which they could properly convict the defendant. They found him guilty of the offense as charged in the information. All the evidence shows that when the defendant had sexual intercourse with the prosecutrix, the last of March or the 1st of

April, 1906, as charged in the information, and at the time
of the identified offense and transaction, when she became
pregnant, she was more than eighteen years and four months
of age. The evidence is therefore wholly insufficient to
show that the defendant then, or at any other time with re-
spect to that offense or transaction, had carnal knowledge
of a female under the age of eighteen years. The court
charged the jury that the defendant, under the information,
could not be convicted of fornication or for any sexual in-
dulgence had with the prosecutrix after she became
eighteen years of age. Right or wrong, the jury
were bound to follow the law as given them. If,
therefore, by the verdict of the jury finding the defendant
guilty "of the crime of having carnal knowledge of a female
under eighteen years of age, as charged in the information,"
they found him guilty of the offense alleged in the informa-
tion to have been committed on the 1st day of April, 1906,
the only offense of which the defendant was given a prelim-
inary hearing, the verdict is in the very teeth not only of
the charge, but the evidence as well. The state concedes
this, but urges that the evidence is sufficient to show that
the defendant committed an offense of having carnal knowl-
edge of the female named in the information about the first
part of November, 1905, when she was under eighteen years
of age, and that the evidence of that offense and that trans-
action is sufficient to support the verdict. Before one can
be properly charged by information of the commis-
sion of a crime, the Constitution guarantees to him
a preliminary examination before a committing mag-
istrate. Such an examination can only be waived by the con-
sent of the accused and the state. It is very clearly made
to appear that the only offense testified to at the preliminary
examination and the only transactions there inquired about,
was the offense committed and the transactions of the last
of March or the 1st of April, 1906, the time stated in the
information. The prosecutrix there testified that the first
time the defendant had sexual intercourse with her was at
that time, and that she was then only seventeen years of age,

and that she then became pregnant. The evidence there was ample to show that a felony had then been committed. It is just as clearly made to appear that it was that offense that was charged in the information. At the trial in the district court the state opened its case with the prosecutrix on the stand by inquiring about the paternity of the child, when it was born, and the sexual intercourse of the defendant with the prosecutrix when it was conceived. The record shows that nearly all the evidence introduced by the state related to that offense, and to transactions connected therewith and those occurring subsequently thereto. The evidence with respect to the offense committed about the 1st of November, 1905, was not offered until after the state had identified and characterized the transaction of April 1, 1906, and the offense growing out of it, and the evidence of such prior offense was confined to but a few questions asked the prosecutrix as to when and where she first had sexual intercourse with the defendant and the answers she made thereto. It undoubtedly is the law, as is urged by the state, that time is not a material ingredient of such an offense, and that it is not essential that it be precisely stated in the information, and that evidence of the commission of the offense alleged on a date other than and prior to that alleged is competent and admissible. That is to say, the state is not required, where time is not an essential ingredient, to prove the offense alleged and the transaction out of which it arose at the particular time stated in the information, but may prove them at any other and prior time within the statutory period of limitations. But that is not the point. The record here shows two separate and distinct offenses, and two separate and distinct transactions. Two separate and distinct offenses were testified to by the prosecutrix and proven by the state. One was committed on the 1st day of April, 1906, when the prosecutrix became pregnant, and the other along about the 1st of November, 1905. It was with respect to the offense of April, 1906, and to the transactions out

of which it arose, that the defendant was given his constitutional privilege of a preliminary hearing. The district attorney, in the information, charged him with the offense growing out of that transaction. He could not legally charge him with any other. Nearly all of the evidence of the state was directed to that offense and to the transactions connected therewith. Of course, the state could prove the commission of that offense at some other and prior time than alleged in the information; but the state proved it precisely as alleged, and in order that there might be no doubt as to the identity of the transaction, and as to the time when the offense was committed, the state identified and characterized it by proof of the paternity and birth of the child, and produced and exhibited the child as the result of the defendant's carnal knowledge of the prosecutrix. But, finding that the prosecutrix was not under eighteen years of age when the offense was committed, the state then proved another offense which was committed about five months prior thereto, a transaction, however, entirely independent of the other. It is the evidence of such prior transaction, and of such prior offense, which is now pointed to by the state to support the verdict rendered by the jury.

That is to say, a complaint was filed against the defendant before the committing magistrate, and the defendant given the benefit of a preliminary examination for an offense growing out of particular transactions and none other; the information filed in the district court charged him with that offense; on the trial the state opened the case on its behalf with proof, of such transactions, and mainly tried the defendant for such offense; and now the verdict which was rendered finding him guilty as charged, is claimed to be supported and sought to be upheld by the evidence of a wholly different and prior offense, and one arising out of an entirely different and independent transaction. To permit the verdict to be so upheld is to render ineffectual the constitutional privilege giving the accused the benefit of a preliminary examination. No claim is made by the

state that the defendant was given the benefit. of a preliminary examination for the offense committed about the 1st of November, 1905, nor that the transactions out of which that offense arose were in any manner inquired about, nor that any evidence was introduced or given with respect to them, at the preliminary examination when the defendant was held to answer to the district court. What it, in effect, claims, is that the state can give the accused the benefit of a preliminary examination of an offense arising out of a particular transaction, charge him with and try him for that offense, and convict him of any similar offense arising out of an entirely different transaction which there is evidence to show was committed by the defendant within the statutory period of limitations. To make such claim leads to the assertion that if a complaint is filed before a committing magistrate charging A. with the crime of adultery committed with a woman B. at a particular time, and at the preliminary examination the offense and transaction is identified and testified to as having been committed at the time so charged, and in or about a certain rooming house in Salt Lake City in the northern part of the county, and the evidence at such hearing with respect to the conduct of A. and B., tending to show illicit and unlawful intercourse, is directed to that time and place, and to that particular transaction, and none other, and the defendant is thereafter informed against and charged with the offense growing out of such transaction, and at the trial the case is opened on behalf of the state by giving evidence tending to show A. and B.'s conduct and sexual intercourse at such time and place, but the district attorney on the morning, or in the progress, of the trial, discovering that A. and B. were husband and wife and lawfully married to each other when they indulged in sexual relations at that time and place, may then show that several years prior thereto, when they were not wedded to each other, they indulged in sexual relations in some building at the town of Draper in the southern part of the county, and may uphold a verdict of a jury finding the defendant guilty as

charged upon the evidence so adduced of such prior offense. We do not so understand the criminal law. The constitutional privilege guaranteeing the accused the benefit of a preliminary examination is, in such instance, rendered futile. The case in hand is not in principle unlike such a case. What we said and decided in the case of *State v. Jensen*, 34 Utah 166, 96 Pac. 1086, is controlling as to the question here involved. Mr. Justice McCarty, the then Chief Justice, there said:

"The district attorney, however, was permitted to file a second information, in which defendant was charged with having committed a like offense on December 15, 1904—an offense separate and distinct from the one charged in the complaint upon which the preliminary examination was had, and for which the defendant was bound over and held to answer to the district court, and for which he was informed against by the district attorney in the first instance. The record shows that no evidence was introduced at the preliminary hearing of the offense charged in the second information, nor was the defendant bound over for that offense. Therefore the defendant was charged with and placed upon trial for an offense for which he had no preliminary examination, and for which he had never been committed and held to answer, as required by section 13, art. 1, of the Constitution of Utah."

Here the verdict is sought to be upheld without even the filing of a new information, and without any election having been made of the prior offense. The state, by opening the case on its behalf with proof of the offense committed on April 1, 1906, and by directing nearly all its evidence to that offense and to the transactions connected therewith, and not having made an election of any prior or other offense or transaction, must be held to an election of the offense committed on the 1st day of April, 1906, and as alleged in the information.

The judgment of conviction is reversed, and the case remanded to the district court.

FRICK and McCARTY, JJ., concur.