622 F.2d 956
 Dwight KELSEY, on his own behalf and behalf of others
similarly situated, Appellant,
v.
STATE OF MINNESOTA, Kenneth Schoen, Commissioner of
Corrections, Bruce McManus, as Warden of
Stillwater State Prison, and their
employees and agents, Appellees.
 No. 78-1797.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1980.
Decided March 18, 1980.
 
 John W. Lundquist, Delaney & Thompson, Minneapolis, Minn., for appellant.
 Gary Hansen, Sp. Asst. Atty. Gen., St. Paul, Minn., for appellee; Warren Spannaus, Atty. Gen., St. Paul, Minn., on the brief.
 Before ROSS and HENLEY, Circuit Judges, and PORTER, District Judge.*
 PER CURIAM.
 
 
 1
 Dwight W. Kelsey appeals from the district court's[1] granting of a summary judgment in favor of the defendants, the state of Minnesota and officials and employees of its Department of Corrections. Kelsey has brought this action under 42 U.S.C. § 1983, arguing that the defendants have deprived him of the fundamental constitutional right of access to the courts by maintaining an inadequate prison law library and by providing insufficient alternative means of access to the courts.
 
 
 2
 In support of his claims, appellant Kelsey submitted information concerning the library's inventory, its updating and its irregular hours of access. The appellees conceded the inadequacy of the prison library, but nevertheless filed a motion for summary judgment on the grounds that Kelsey had full access to the courts through other channels. We are called upon, on appeal, to determine whether the defendants were entitled to the summary judgment as a matter of law or whether genuine issues of material fact still exist as to Kelsey's access to the court system.
 
 
 3
 The parties to this litigation do not dispute the principle that every inmate has a constitutional guarantee of access to our courts. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Both parties also agree that prisoners seeking redress for deprivation of their civil rights by prison officials must be provided with "adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (emphasis supplied). The Supreme Court has recognized in this regard that the maintenance of an adequate prison law library is only one constitutionally acceptable means of assuring access to our courts:
 
 
 4
 It should be noted that while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here * * * does not foreclose alternative means to achieve that goal. Nearly half the states and the District of Columbia provide some degree of professional or quasi-professional legal assistance to prisoners. * * * Such programs take many imaginative forms and may have a number of advantages over libraries alone.
 
 
 5
 Id. at 830-31, 97 S.Ct. at 1499.
 
 
 6
 This court, too, has recognized that a prison law library is only one means of providing access to our courts, and we have held, specifically, that the government need not provide inmates with every possible means of access to the courts:
 
 
 7
 We turn first to Noorlander's initial ground that his right to self-representation mandates the provision of a law library by the Medical Center. We find this argument without merit. Under Johnson v. Avery, supra, the Government need not furnish every means of access to the courts. It need only provide some opportunity for a prisoner to gain equal access to the courts. Thus, if the public defender program at the Medical Center is effectual, the Government has met its burden under Johnson v. Avery regardless of any concomitant right to represent oneself in habeas proceedings. * * * Only failing the efficacy of the defender program and failing other suitable alternatives is Noorlander entitled to an adequate law library to aid him in his pro se attempts to secure access to the courts and obtain postconviction relief.
 
 
 8
 Noorlander v. Ciccone, 489 F.2d 642, 650 (8th Cir. 1973). Moreover, we have determined that an alternative program under Johnson v. Avery must be evaluated on its own to establish, first, what the prisoners' needs for legal assistance are and, second, whether those needs are being met. Id. See McDonnell v. Wolff, 483 F.2d 1059, 1065 (8th Cir. 1973), aff'd in part, rev'd in part, 418 U.S. 539, 577-80, 94 S.Ct. 2963, 2985-86, 41 L.Ed.2d 935 (1974). A review of the record and Judge Larson's memorandum order of October 25, 1978, in particular, convinces us that the trial court squarely addressed the issue of the adequacy of alternative means of access to the courts, and that, as a matter of law, it has been shown that Kelsey's needs for legal assistance have been met.[2]
 
 
 9
 We have thoroughly examined the briefs and record in this proceeding and we are satisfied with the district court's disposition of Kelsey's other claims. Accordingly, we affirm on the basis of Judge Larson's well reasoned opinion pursuant to Rule 14 of the Rules of this court. We would like to note in conclusion, however, that this holding is limited to the instant pleadings, affidavits and complaint, and does not insulate any present or future methods of providing state prisoners with court access from judicial scrutiny.
 
 
 10
 DONALD J. PORTER, District Judge, dissenting.
 
 
 11
 Prison officials are affirmatively obligated to provide prisoners with adequate law libraries or adequate assistance from persons trained in law. Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). The issue of whether the state is meeting this obligation is presented by the record, and I would remand this case to the district court so that an evidentiary hearing may be held on this important question. Noorlander v. Ciccone, 489 F.2d 642 (8th Cir. 1973).
 
 
 12
 Since the State concedes the inadequacy of its prison library, the only factual issue is whether it is furnishing prisoners adequate assistance from persons trained in law. More specifically, the factual dispute centers on whether the State is providing adequate law trained assistance to prisoners seeking court access to assert civil claims in habeas corpus or under civil rights statutes such as 42 U.S.C. § 1983.
 
 
 13
 On this point, in support of its summary judgment motion the State submitted the affidavit of an assistant attorney general of Minnesota. Affiant asserted that the "Legal Assistance to Minnesota Prisoners (project is) charged by law with representing the civil legal needs of Minnesota State Prison inmates and that they do in fact represent those inmates in all types of civil litigation, including habeas corpus actions in the state and federal courts." Plaintiff, by answering affidavit brought into the record an April 28, 1977, newspaper article in the St. Paul Pioneer Press quoting the Legal Assistance to Minnesota Prisoners (hereafter L.A.M.P.) Project Director, James Cullen, as saying that "While L.A.M.P. helps prisoners, it works selectively and does not provide complete service." Cullen also was quoted in the article as expressing concern about potential legislative restrictions on L.A.M.P.[1] These restrictions were later adopted by the legislature, 1977 Minnesota Laws, Ch. 455, § 8.[2] In another document in the record, plaintiff alleged that he had been refused legal assistance from the L.A.M.P. project.[3],[4]
 
 
 14
 The State's claim that it was affording law trained assistance to prisoners in habeas corpus and civil rights cases was essentially based on the fact of the existence of the state funded L.A.M.P. project.[5],[6] However, the district court in its memorandum of October 25, 1978, did not address the impact, if any, of Minnesota Law 1977, Ch. 455, § 8 (see footnote 2). This funding restriction on L.A.M.P. comes close to cutting off the civil rights actions which the Supreme Court has sought to protect by guaranteeing a prisoner a right of access to the courts. Civil rights suits under 42 U.S.C. § 1983 are, by their nature, directed at public officials, and when brought by prisoners, generally seek to force a change in public policy concerning the treatment of prison inmates. Standing by itself, this funding limitation is evidence that defendants' allegation in support of summary judgment that L.A.M.P. represents prisoners in "all types of civil litigation" is factually erroneous.[7]
 
 
 15
 Even without this restriction, the fact that the L.A.M.P. project is authorized and funded by the State of Minnesota is not, alone, sufficient to show that the project is constitutionally sufficient. As stated in Buise v. Hudkins, 584 F.2d 223, 228 (7th Cir. 1978):
 
 
 16
 Judicial notice of a statute requiring certain services, even assuming the requirements fully cover inmates' needs, is insufficient because it does not follow from the existence of the statute that an alternative actually exists. The Public Defender may disregard the statute or, more likely, the office simply may lack the resources necessary to provide meaningful access at each of the state's institutions. In this context, a mere reference to the statute does not carry the state's burden of proof of adequate alternatives.
 
 
 17
 Bounds v. Smith, supra, 430 at 825, 97 S.Ct. at 1496, adds that mere availability is not enough, and that the key inquiry is whether a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights" is provided.
 
 
 18
 "An alternative program . . . must be evaluated on its own to determine whether it is a reasonable alternative to provide access to the courts." Noorlander v. Ciccone, supra, 489 F.2d at 650. As Noorlander wisely held in its analysis of this difficult issue, the Nebraska corrections department bore the burden of showing adequacy by evaluating two variables. "First, it must be shown what the need for legal assistance is, taking into account the need for assistance in civil rights actions as well as habeas corpus suits. Secondly, it must be shown that the correction facility is meeting that need." Noorlander v. Ciccone, supra, 489 F.2d at 650-51. Considered in the light of the Noorlander analysis, I believe there are genuine issues of material fact in this record concerning both variables.
 
 
 19
 The State bears the burden of demonstrating the adequacy of the alternate means of access at issue here, Buise v. Hudkins, supra, 584 F.2d at 228, but also, the record, to sustain the summary judgment against plaintiff, must show affirmatively that plaintiff would not be entitled to relief "under any discernible circumstances." Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213, 216 (8th Cir. 1951).
 
 
 20
 Even taking the funding restrictions on L.A.M.P. into account, I am unable to say that the Minnesota legal assistance programs are, in practice, constitutionally inadequate. The fact that this still seems to me an open question, on this record, leads me to respectfully dissent from the majority opinion. I would remand this case to the district court for a plenary examination of plaintiff's claim.
 
 
 
 *
 The Honorable Donald J. Porter, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 Kelsey appeals from the decision of The Honorable Earl R. Larson, Senior District Judge, United States District Court for the District of Minnesota, Third Division. This case was consolidated with the other appeals which Kelsey had pending before the court (Nos. 78-1887 and 79-1255). This court affirmed the district court's dismissal in 78-1887 and 79-1255 in a per curiam opinion on October 9, 1979, and severed this case and ordered that it be set for oral argument and that counsel be appointed to represent Kelsey at oral argument
 
 
 [2]
 It should be noted that it is not necessary to provide legal assistance for every conceivable civil claim prisoners wish to process. Both the courts and the legal assistance agencies themselves have the right to determine which claims merit legal assistance. See generally Johnson v. Avery, 393 U.S. 483, 488, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969)
 
 
 [1]
 Plaintiff, in his affidavit, quotes from this newspaper article as follows:
 Cullen also said there is the possibility LAMP may be shut down by the state legislature.
 Legislators have attached a "rider" to LAMP funding, Cullen explained, which could being an end to LAMP. He said legislation to fund LAMP under the public defender budget is presently before a House Subcommittee.
 "If that rider goes through," Cullen said, "I have little doubt that one year from today (legislators) will conclude we are not performing to legislative intent" and discontinue LAMP.
 Cullen said the rider establishes a review committee which at mid-biennium will check LAMP operations. The committee has the power to shut LAMP down if it is determined the organization has violated legislative intent.
 A condition of LAMP's initial funding is at the center of the problem, Cullen said that "rider prohibits LAMP from using its money to sue state or public officials or trying to change public or social policy. LAMP has taken the position it can sue to protect a prisoner's rights under constitution.
 LAMP has other problems, Cullen continued. By shifting funding to the public defender, he said it is uncertain if university law students will continue to work for LAMP as legal researchers.
 Also, Cullen said he and LAMP'S other attorney are quitting the organization June 1. That, according to Cullen raises the problem of who will provide inmate legal services until new attorneys can be hired in July.
 
 
 [2]
 Legal assistance to Minnesota prisoners shall serve the civil legal needs of persons confined to state institutions. None of these funds shall be used to pay for lawsuits against public agencies or public officials to change social or public policy
 Legal assistance to Minnesota prisoners shall make an interim report to the legislative commission to review administrative rules on or before July 1, 1978. The commission shall review and comment on the propriety of the cases handled and may, using the provisions of Minnesota Statutes, Section 3.965 suspend the activities of legal assistance to Minnesota prisoners.
 
 
 [3]
 See Request for Admission under Rule 36, Fourth Set, 2(F):
 "The plaintiff has been refused legal assistance from the L.A.M.P. project; therefore, the state is obligated to provide the plaintiff with legal materials."
 
 
 [4]
 At one point in the memorandum order of October 25, 1978, the following appears: "Plaintiff has, on occasion, used the services offered by L.A.M.P., as the record indicates. Plaintiff's Request for Admission under Rule 36, Ex. C, August 3, 1976." The appeal record does not reflect an exhibit of that date but does contain an Ex. C dated May 3, 1976, attached to Plaintiff's Request for Admission under Rule 36. This Ex. C is a letter from Michael Evans, L.A.M.P. student attorney to inmate Ronald Gleason, indicating that Evans assisted Gleason, not plaintiff, on two legal matters
 
 
 [5]
 In Kelsey v. State ex rel. Wood, 283 N.W.2d 892, 894 (Minn.1979) the Minnesota Supreme Court ruled that habeas corpus would be thenceforth considered an appropriate remedy for review of prisoner claims that statutory and constitutional provisions had not been observed in parole decision making. The court noted that " . . . a high percentage of prisoners who seek judicial review of denial of parole are unlikely to be represented." 283 N.W.2d at 895
 The post-conviction relief statute, Minn.Stat. 590.01 et seq., with respect to which the State Public Defender may be appointed, does not encompass habeas corpus relief to seek, inter alia, review of parole decision making.
 
 
 [6]
 The Assistant Attorney General also said in his affidavit for summary judgment that the Minnesota Public Defender (State funded) "occasionally represents inmates in habeas corpus actions in the federal courts." However, the record reflects plaintiff's claim that "The Minnesota Public Defender does not assist Minnesota inmates in the preparation of pleadings to the Federal Courts . . . ." Also a part of the record is a letter to plaintiff from the Minnesota Public Defender, dated May 26, 1976, stating: "We are unable to assist you with regard to proceeding in federal court." The letter then suggests that if plaintiff will write to the Clerk of the U.S. District Court an attorney will be appointed for him
 Although counsel may be appointed for a federal plaintiff under 28 U.S.C. § 1915, there is no information in the record from which it can be determined how often this is done in Minnesota. These appointments are granted only in exceptional circumstances. United States v. McQuade, 579 F.2d 1180, 1181 (9th Cir. 1978).
 
 
 [7]
 The fact that plaintiff apparently elected to proceed in this case, pro se, does not relieve the state of its obligation to provide a means of access to the courts. The state has made its choice that such access shall be through the availability of trained legal assistance to prisoners. In order to deny plaintiff access to an adequate law library, the state must demonstrate the adequacy of its chosen alternative. The state bears that burden, regardless of plaintiff's pro se status here, Noorlander v. Ciccone, 489 F.2d 643, 650 (8th Cir. 1973), and regardless of his frequent pro se litigation prior to this case