STATE of Iowa, Appellee,

v.

Roger Lee SIMON, Appellant.

No. 63022.

Supreme Court of Iowa.

Oct. 15, 1980.

Randy J. Hohenadel of Newport, Fortini & Hohenadel, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Shirley Ann Steffe, Asst. Atty. Gen. and William Davis, Scott County Atty., for appellee.

Considered by UHLENHOPP, P. J., and HARRIS, McCORMICK, LARSON and SCHULTZ, JJ.

LARSON, Justice.

This defendant appeals from his conviction of willful injury, in violation of section 708.4, The Code 1977, complaining of the trial court's refusal to allow him to discharge his court–appointed attorney and to allow him to use the Scott County Bar Association library in the preparation of his defense. We affirm the trial court.

On August 28, 1978, after defendant's arraignment, he advised the court that he had discharged his attorney and asked that he be allowed to conduct his defense pro se. The court appointed Mark Smith, a local attorney, to assist him in his defense. An application was filed on September 8 by which the defendant, who was confined to jail, sought permission to use the local law library, asserting that he was conducting his own defense, with assistance from Smith, and that access to the law library was essential to his preparation. At the hearing on the defendant's application the court advised him that he would not be permitted to use the library, but that his lawyer would be permitted to "bring you anything you want." The defendant then inquired: "Could I fire him, just so I could do my own research?" The court refused to allow discharge of his attorney.

The defendant urges three errors on appeal, although we believe they are closely related and thus resolve into only two: refusal of the trial court to allow defendant to (1) discharge Smith, and (2) use the law library. We thus address the interaction of two firmly established principles: that a criminal defendant may not constitutionally be refused his right of self–representation, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and that adequate preparation for judicial proceedings requires access by prison inmates to an adequate law library or suitable alternatives, *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

*I. Request to discharge appointed attorney.* Although an attorney was appointed to assist the defendant during the pretrial and trial proceedings who presumably rendered advice of a general nature to him, it is clear that the defendant was in charge of his defense and that, as he characterized his attorney's role, it was limited to one of a "resource." The defendant orally argued his application to use the library; at trial, he made his own opening statement, cross–examined the State's witnesses, raised objections to its proffered evidence, and made and argued a motion for directed verdict. The defendant objected to questions put to him during the State's cross–examination. He renewed his motion for a directed verdict and objected to the court's instructions. He then made the final argument to the jury. Smith remained only as a reference source, except that he conducted the direct examination of the defendant.

The facts of this case are thus distinguishable from *Faretta*, in which the appointed attorney supplanted the defendant, against his wishes, in the preparation and presentation of the defense. The Supreme Court noted that Faretta's request to act as co–counsel had been rejected and that "[t]hroughout the subsequent trial, the judge required that Faretta's defense be conducted only through the appointed lawyer from the public defender's office." 422

U.S. at 810–11, 95 S.Ct. at 2529, 45 L.Ed.2d at 568. The defendant, who argues that refusal of the trial court to allow him to fire his lawyer cannot be condoned under *Faretta*, reads too much into that case. *Faretta* did not hold that a lawyer could not be appointed to assist the defendant, or that a defendant had a constitutional right to discharge him; it merely held that the lawyer could not usurp that role by taking control of the defense against the wishes of a defendant who desired to conduct his own defense.

We addressed a similar issue in *Houston v. State*, 246 N.W.2d 908 (Iowa 1976), which held that a lawyer appointed to be present during the courtroom proceedings, in which the defendant assumed the primary defense role, did not offend the rule announced in *Faretta*. We said, "[t]he difference between the *Houston* and *Faretta* trials is that Houston was permitted to represent himself whereas Faretta was not. Houston exercised the constitutional right which Faretta was denied." *Id.* at 909. Under the same reasoning this defendant cannot successfully rely upon *Faretta* here: he was in charge of his own defense; his court-appointed lawyer did not preempt the defense lawyer's role as in *Faretta*.

It is clear from the record made on the defendant's request to use the law library that his proposed discharge of his attorney was for the purpose of assuring his own use of the library, and not because the attorney had overstepped his role as an advisor or interfered with the preparation of his defense. He argues that legal research is a necessary part of his right of self–representation assured him under *Faretta* and that he, rather than the lawyer, must be accorded that right if demanded.

We do not believe, however, that *Faretta* can be read to bestow upon a pro se defendant the right to perform all of the functions of a lawyer acting in his behalf. While required reliance by a pro se defendant upon others for assistance in legal research might be considered a pro tanto denial of his right of self–representation, it does not amount to a usurpation of that right as proscribed by *Faretta*.

The Supreme Court has recognized that representing oneself has its disadvantages:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self–representation, he should be made aware of the dangers and disadvantages of self–representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–82 (citations omitted). While we believe denial of the right to do legal research could be considered one of the disadvantages in choosing self–representation, it would not rise to the level of a deprivation of his sixth–amendment right as addressed by *Faretta*. We do not choose to extend the rule of that case here; accordingly, the trial court did not err in denying the defendant's application to discharge his attorney.

■ *II. Defendant's access to law library.* While the first issue, concerning the right of self–representation, arose out of the court's denial of the defendant's request to use the law library and his resulting attempt to discharge his attorney to gain that access, the second issue raises the specific question of whether the trial court's order in response to that request complied with the constitutional requirement of "access to the courts."

The case primarily relied upon by the defendant is *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Court in *Bounds* traced the development of case law on access to the courts from *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941) (striking down procedural barriers to filing of habeas corpus petitions by prisoners) through *Burns v. Ohio*, 360

U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959) (requiring waiver of docket fees for indigent prisoners), *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (requiring cost–free transcripts for indigent inmates), *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (confirming right of prisoners to be represented by "jailhouse" lawyers), and other cases, to *Ross v. Mofitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) which, according to *Bounds*, succinctly stated the rule distilled from these cases: the constitutional sufficiency of court access turns on whether it is *meaningful* access. 430 U.S. at 823, 97 S.Ct. at 1495, 52 L.Ed.2d at 80.

The *Bounds* Court recognized that "[i]f a lawyer must perform such preliminary research, it is no less vital for a pro se prisoner." *Id.* at 825–26, 97 S.Ct. at 1497, 52 L.Ed.2d at 81. Thus, legal research was deemed to be an integral part of a defendant's trial preparation and a prerequisite to meaningful court access. While the Court did not elaborate on the parameters of its rule, it made it clear that *personal* access by a pro se defendant was not required in all cases:

> [T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or adequate assistance from persons trained in the law.*

430 U.S. at 828, 97 S.Ct. at 1498, 52 L.Ed.2d at 83 (emphasis added).

The Court further stated:

> It should be noted that while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here . . . does not foreclose alternative means to achieve that goal.

430 U.S. at 830, 97 S.Ct. at 1499, 52 L.Ed.2d at 84.

The defendant, while recognizing that *Bounds* allows for alternative means of trial preparation, insists that a requirement that legal research be done by an attorney is an impermissible alternative, because the ef-fect was "to force the services of an attorney on the defendant in violation of the defendant's right of self representation" under *Faretta.* While this argument was addressed in the first division, we note the language in *Bounds*, in approving "assistance from persons trained in the law," clearly allows for legal research by a court–appointed lawyer. The key to constitutional sufficiency is not *which* of the alternatives is used, but whether the one chosen is "adequate." 430 U.S. at 828, 97 S.Ct. at 1499, 52 L.Ed.2d at 83.

A claim by a state prisoner of a personal right of access to a prison library was discussed in the recent case of *Kelsey v. State*, 622 F.2d 956 (8th Cir. 1980). In discussing the alternative procedure test of *Bounds* and earlier cases, the court said that an alternative proposal "must be evaluated on its own to establish, first, what the prisoners' needs for legal assistance are and, second, whether these needs are being met." *Id.* at 958.

The burden of proving the adequacy of an alternative procedure is upon the State. *Buise v. Hudkins*, 584 F.2d at 228; *Novak v. Beto*, 453 F.2d 661, 664 (5th Cir. 1971), *cert. denied*, 409 U.S. 968, 93 S.Ct. 279, 34 L.Ed.2d 233 (1972).

Applying the *Kelsey* test of adequacy to this case, the first inquiry, identification of the defendant's need, is answered by *Bounds:* a pro se defendant must be allowed to perform preliminary research to the same extent as a lawyer would in representing a client. This obviously requires access to a law library or "adequate assistance from persons trained in the law." Thus, the defendant's need for research cannot seriously be argued. The second inquiry is whether that need was met under the circumstances here. We note at the outset that the defendant was represented by a lawyer throughout the proceedings. In contrast, the cases discussed above and those relied upon by the defendant involved post–trial proceedings by prison inmates, where the relatively close attorney–client relationship of pretrial and trial proceedings was lacking. Those cases are thus

distinguishable on their facts. It is true that the defendant here did not wish to accept the alternative of having his lawyer do the research but, so long as the State establishes it is an adequate alternative, the choice is not his. *See Bounds*, 430 U.S. at 830–31, 97 S.Ct. at 1499, 52 L.Ed.2d at 84; *Noorlander v. Ciccone*, 489 F.2d 642, 650 (8th Cir. 1973).

We have examined the facts of this case in light of these principles. The defendant's court–appointed lawyer was made accessible to him by the court's order. The actual assistance of the lawyer is shown throughout the proceedings: he drafted the application for pro se use of the library and was present in court when it was argued; several pretrial motions were drafted by him, and the attorney apparently took discovery depositions for the defendant. With this degree of availability of legal counsel, and in light of the court's order that the defendant could receive "any legal materials he wishes" through his attorney, we conclude that this alternative was adequate.

We find no error in the trial court's denial of the defendant's request.

AFFIRMED.