George J. NOWLIN, Kent R. Benadum, Appellants,

v.

Iowa State Penitentiary Warden, David J. SCURR, Appellee.

No. 67544.

Supreme Court of Iowa.

March 16, 1983.

George J. Nowlin and Kent R. Benadum, pro se.

Thomas J. Miller, Atty. Gen., and Bruce C. McDonald, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and CARTER, JJ.

REYNOLDSON, Chief Justice.

Plaintiffs Nowlin and Benadum appeal from district court's decree providing them only partial relief in their mandamus action that alleged they were being deprived of access to the courts. We reverse and remand for further proceedings.

Plaintiffs' pro se petition, filed November 21, 1980, alleged they were confined in "Maximum security setting administrative segregation" at Iowa State Penitentiary. They essentially alleged they were being denied meaningful access to the courts by being deprived of ball-point pens, pencils, erasers, hardback or bound lawbooks, use of a typewriter, legal-size paper and clips, and interlibrary loans. They alleged the felt-tip pens they were provided would not make carbon copies and they were without funds to pay for photocopying. Plaintiffs' petition prays defendant be commanded:

(a) To allow Plaintiffs ink pens (ball point) & ink erasers, hard back or bound law books & Text books from the Prison law library # 255, to allow xerox of legal papers & documents going directly into the Courts in the State of Iowa, to allow Plaintiff Benadum access to a type writer .... (b) To afford Plaintiffs legal size paper (white) Tape, Pencils & Erasers, Legal folders & Clips from the Library # 255 herein I.S.P. To afford, Plaintiffs access to the Prison law library books etc. ....

The court file accompanying the appeal discloses this petition was typed. Filed with the petition was a large volume of photocopied correspondence and documents, some written by plaintiffs, and all legible. Plaintiffs were permitted to file their petition without payment of fee, and service of notice was accomplished without prepayment of service fees.

The matter was reached for hearing March 6, 1981. After a colloquy among the court, plaintiffs, and counsel for defendant, it was agreed that no testimony would be submitted, the court would consider documentary evidence submitted by both parties. The court stated it would "make an order or a ruling in accordance with the law as I see it to govern future actions as far as [plaintiffs'] rights to legal materials and the law library."

Trial court's ruling, filed August 4, 1981, quoted pertinent "institution policies as of January 15, 1981," which provided:

(1) All inmates will have access to legal materials. This also will apply to inmates in the security unit. These inmates should have access to both their own personal legal work and any literature that may be available in the institution law library. ... (2) Inmates in the security unit will receive a sufficient quantity of reading materials. These inmates should have the same opportunity to borrow reading materials from the institution as that afforded to general population inmates. ...

Inmates in the security unit will have library privileges. ...

(3) The Iowa State Penitentiary shall make no policy to restrict the rights of inmates in the access to community legal services ....

Supplies and services related to legal matters, i.e., paper, typewriters, etc. shall be made available for purchase through store orders.

The court further found that the Resident Behavioral Guidelines for the security cell house unit permitted an inmate in administrative segregation to have in his cell, among other things, two felt-tipped pens, a file folder for storing legal materials, loose notebook paper, ten bound volumes or books at any one time, and library rotation. The court examined copies of plaintiffs' requests for books, and the institution's responses, and found that "[p]etitioners, other than producing evidence that certain volumes of case books were not available when requested, have not demonstrated inadequacy of the prison library." The court concluded "that the rules of the institution regulating inmates' access to legal materials while in administrative lock-up [did] not equate to a denial." Nonetheless, the court "ordered that legal size paper and clips be available to [plaintiffs] at their expense."

Plaintiffs' pro se appeal contends trial court erred (1) in not making any findings of fact or conclusions of law concerning plaintiffs' allegations of illegal and unconstitutional cell searches and deprivation of interlibrary loan materials, (2) in ordering legal-size papers and clips be provided at

*plaintiffs'* expense, and (3) in finding that plaintiffs were not denied meaningful access to the courts.

■ Mandamus is an equitable action. Iowa Code § 661.3. Our review is de novo. *Osborn v. City of Cedar Rapids,* 324 N.W.2d 471, 474 (Iowa 1982). We give weight to trial court's findings but are not bound by them. *Schrader v. State,* 213 N.W.2d 539, 540 (Iowa 1973).

I. *Failure to Make Certain Findings of Fact and Conclusions of Law.*

Plaintiffs contend district court erred "in not making any findings of fact or conclusions of law concerning the allegations in plaintiff's petition that he was denied a[n] interlibrary loan, and illegal cell searches in violation of the Fourth and Fourteenth Amendments to the United States [Constitution]."

At the outset we note trial court's omission of these matters is understandable. Plaintiffs' petition requested no relief relating to cell searches or interlibrary loans. The hearing transcript indicates the cell search issue had been resolved in a federal court proceeding. It does not reflect any discussion concerning interlibrary loan problems.

■ Further, without a timely motion under Iowa Rule of Civil Procedure 179(b) to enlarge or amend findings, a party may not challenge the absence of any particular finding of fact or conclusion of law on appeal. *Michael v. Merchants Mutual Bonding Co.,* 251 N.W.2d 531, 533 (Iowa 1977); *Fjelland v. Wemhoff,* 249 N.W.2d 634, 638 (Iowa 1977). Thus nothing is presented for review as to this issue.

II. *Ruling that Paper and Clips be Furnished at Plaintiffs' Expense.*

■ Plaintiffs insist that legal-size paper and clips should be made available to them free of charge, in order that they may have meaningful access to the courts.

In 1941 the United States Supreme Court first recognized a prisoner's right of access to the courts. *See Ex parte Hull,* 312 U.S.

546, 549, 61 S.Ct. 640, 642, 85 L.Ed. 1034, 1036, *reh. denied,* 312 U.S. 716, 61 S.Ct. 823, 85 L.Ed. 1146 (1941) (regulation prohibiting state prisoners from filing habeas petitions unless they were "properly drawn" unconstitutional). The right is grounded "in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violation of fundamental constitutional rights." *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935, 964 (1974). Since *Hull* the scope of the right has been expanded. *E.g., Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891, 899, *reh. denied,* 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480 (1956) (States must provide trial records to inmates unable to buy them.); *Long v. District Court of Iowa,* 385 U.S. 192, 194–95, 87 S.Ct. 362, 364, 17 L.Ed.2d 290, 293 (1966) (State must provide transcript of postconviction proceedings.); *Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718, 724 (1969) (regulation prohibiting prisoners from assisting each other with legal matters invalid). As stated in *Bounds v. Smith,* 430 U.S. 817, 823, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72, 80 (1977), "meaningful access" is the touchstone of the prisoner's right of access to the courts.

Narrowing our focus to plaintiffs' right to paper and clips at public expense, we note the majority opinion in *Bounds,* 430 U.S. at 824–25, 97 S.Ct. at 1496–97, 52 L.Ed.2d at 80–81, states:

Moreover, our decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts. It is indisputable that indigent inmates must be provided *at state expense* with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them.

(Emphasis added.)

The majority of federal courts have translated the state's burden "to shoulder affirmative obligations" to assure prisoners meaningful access to the courts into an additional trial burden to affirmatively

prove that the means provided for access are adequate. *See, e.g., Storseth v. Spellman,* 654 F.2d 1349, 1352 (9th Cir.1981); *Rich v. Zitnay,* 644 F.2d 41, 43 (1st Cir. 1981); *Buise v. Hudkins,* 584 F.2d 223, 228 (7th Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979).[1] We imposed the same burden in *State v. Simon,* 297 N.W.2d 206, 209 (Iowa 1980).

Examining the skimpy record before us in light of this burden, we hold trial court was right in requiring the state to furnish plaintiffs paper for legal purposes, but wrong in holding the cost would be the obligation of plaintiffs.

Plaintiffs' petition and associated affidavits disclose they are indigent in the ordinary sense of being unable to afford counsel. *See* Act of May 19, 1981, ch. 117, § 775(4), 1981 Iowa Acts 408 (codified at Iowa Code § 331.775(4) (1983)). Of course, that issue is not involved here. Whether a prisoner who, for example, has money to buy coffee and cigarettes is indigent in the sense that the state must buy his or her paper for legal purposes is an issue the state has not raised and one we do not decide now. *See Williams v. Illinois,* 399 U.S. 235, 242, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586, 593 (1970) ("[A]ny indigent ... by definition ... is without funds."); *Twyman v. Crisp,* 584 F.2d 352, 359 (10th Cir.1978) ("To require a prisoner who wishes to prosecute several legal actions simultaneously to have to choose occasionally between stamps and coffee is certainly no more a restriction than that which any indigent pro se non-prisoner must face.").

Plaintiffs' demand for free "clips" must be examined in the light that "[t]he duty to protect inmates' constitutional rights ... does not confer the power to manage prisons, for which courts are ill-equipped, or the capacity to second-guess prison administrators." *Ruiz v. Estelle,* 679 F.2d 1115, 1126 (5th Cir) (footnotes omitted), *amended in part, vacated in part, and reh. denied,* 688

F.2d 266 (5th Cir.1982). *See Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447, 474 (1979); *Pepperling v. Crist,* 678 F.2d 787, 789 (9th Cir. 1982) ("courts accord the decisions of prison officials extreme deference ... especially in matters of internal security").

We know of no judicial requirement for paper clips. We will not assume a clerk of court, receiving unattached papers from a prisoner, would not staple or otherwise fasten them together if that is deemed necessary. Furnishing small pieces of metal to maximum security prisoners may present security risks beyond our knowledge. *See Pepperling,* 678 F.2d at 789 ("A guard was hit and injured by a homemade dart.").

In summary, we hold the state must furnish plaintiffs with paper in sufficient size, quantity, and quality to pursue their legal recourses, without charge. The state is not obligated to furnish them "clips."

### III. *Meaningful Access to the Courts.*

Finally, plaintiffs complain trial court wrongly found they were not deprived of meaningful access to the courts, in view of the fact they were not accorded various mechanical and legal supports. A number of these grounds find no support in the law.

Access to the courts does not include a federally protected right to use a typewriter or to have one's pleadings typed. *Twyman,* 584 F.2d at 358; *see Stubblefield v. Henderson,* 475 F.2d 26, 26 (5th Cir.1973).

Similarly, the constitutional concept of an inmate's right of access to the courts does not require that prison officials provide inmates free or unlimited access to photocopying machinery, particularly where there are suitable alternatives. *Harrell v. Keohane,* 621 F.2d 1059, 1061 (10th Cir. 1980); *see Johnson v. Parke,* 642 F.2d 377, 380 (10th Cir.1981).

---

1. A minority of federal decisions seem to require the prisoner to show some actual prejudice or denial of access to the courts. *See Hudson v. Robinson,* 678 F.2d 462, 466 (3d Cir.1982); *Twyman v. Crisp,* 584 F.2d 352, 357 (10th Cir.1978); *Gilmore v. Lynch,* 319 F.Supp. 105, 109 (N.D.Cal.1970), *aff'd sub nom. Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971).

■ A more serious charge is that of inadequate library service. These parties agree that plaintiffs must be provided with access to a reasonably adequate law library for preparation of legal actions, or with adequate professional or quasi-professional legal assistance. *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498, 52 L.Ed.2d at 83; *Simon,* 297 N.W.2d at 209; *Kelsey v. Minnesota,* 622 F.2d 956, 957 (8th Cir.1980). The choice among various methods of access, of course, is not that of the prisoner. *See United States v. Wilson,* 690 F.2d 1267, 1271 (9th Cir.1982).

■ Trial court apparently concluded plaintiffs had access to a reasonably adequate law library. Our de novo review of this ruling is crippled by several unfortunate procedural events. At hearing plaintiffs waived their right to present testimony after the court proposed, without protest from defendant's counsel, "to accept the allegations in [plaintiffs'] Petition as true." The court's ultimate ruling seemed to proceed from an implied finding that certain quoted "institution policies as of January 15, 1981" (a date subsequent to the date the petition was filed), provided adequate opportunity for access to legal materials. None of the material apparently submitted to the court was marked for identification. Much of it is not among the papers submitted with the record, including library requests made by plaintiffs, and replies by the institution, referred to in trial court's decision. In one such reply plaintiff Nowlin was advised that volume 3 of the 1979 Code (containing Iowa's criminal code) "had been stolen for over six months."

A fatal defect in the district court decision, however, was to shoulder plaintiffs with the burden to show they were not provided with access to a reasonably adequate law library. This burden is imposed on defendant. *Storseth,* 654 F.2d at 1352; *Rich,* 644 F.2d at 43; *Buise,* 584 F.2d at 228; *Simon,* 297 N.W.2d at 209. We find no recourse other than to remand this case to district court for a full evidentiary hearing to evaluate the adequacy of the library provided plaintiffs, *see Noorlander v. Cic-*

*cone,* 489 F.2d 642 (8th Cir.1973), unless upon hearing defendant can show some other avenues are available to provide plaintiffs with meaningful access to the courts.

We have examined other contentions raised by both parties in their briefs and find them to be without merit.

We remand for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.