The HAWK EYE and William Mertens, Appellees,

v.

Patrick C. JACKSON, Appellant,

Iowa Department of Public Safety, Intervenor–Appellant.

No. 93–666.

Supreme Court of Iowa.

Sept. 21, 1994.

Bonnie J. Campbell, Atty. Gen., and Jeffrey D. Farrell, Asst. Atty. Gen., for appellants.

Gene R. Krekel and H. Craig Miller of Hirsch, Adams, Krekel, Putnam & Cahill, Burlington, for appellees.

Susan M. Boe and Michael A. Giudicessi of Faegre & Benson, Des Moines, for amicus curiae Iowa Freedom of Information Council.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

This appeal concerns a county attorney's refusal to produce an Iowa Division of Criminal Investigation file for inspection by a newspaper. After weighing the interests of the public on the issue, the district court ordered the official to turn over the file. We affirm.

In the spring of 1991, Steve Sands, a reporter for the Burlington newspaper, *The Hawk Eye*, wrote a series of articles aimed at local reaction to the highly publicized beating of Rodney King by Los Angeles police officers. As a part of the series, Sands interviewed local law enforcement officials about whether allegations of excessive force had ever been lodged against a member of the Burlington police department. During one of these interviews, Sands learned of a possible civil suit against police officer Michael Swore. Sands approached police chief Wendell Patton for his comment regarding the suit. Patton, previously unaware of the alle-

gations, viewed the charges as serious and immediately requested an independent investigation by the Iowa Division of Criminal Investigation (DCI). Patton sought to determine whether Swore had engaged in criminal conduct or had violated departmental rules and regulations.

DCI special agent Wade Kisner took on the assignment. Because the allegations related to an incident that occurred nearly two years earlier, Kisner's report consisted entirely of notes taken in connection with witness interviews. It did not include his personal impressions or conclusions regarding whether any official action should be taken against Swore.

The report was forwarded to both Patton and county attorney Patrick Jackson. Based solely on the report, Patton concluded that Swore had breached no departmental rules or regulations. Jackson agreed and further determined that insufficient evidence existed to warrant prosecution for assault.

After these decisions were made, William Mertens, publisher of *The Hawk Eye*, requested a copy of the DCI report from Jackson. Jackson refused to produce it. The newspaper then sought a writ of mandamus compelling Jackson to make the report available. The Iowa Department of Public Safety intervened on Jackson's behalf.

Prior to hearing on the writ, the civil suit against Swore and the City of Burlington went to trial. Most of the witnesses at trial were the same persons interviewed by Kisner for the DCI report. Sands reported daily on the evidence and testimony presented. During the trial, a second allegation of brutality by Swore surfaced. *The Hawk Eye* investigated and reported on this allegation as well; a separate suit on the matter eventually settled without trial. As to the initial claim, the jury ultimately returned a verdict for damages against Swore and the city.

At the subsequent hearing on the writ of mandamus, the newspaper argued that public access to the DCI report was the only means of reconciling Patton and Jackson's decision not to discipline or prosecute Swore with the jury's arguably contrary findings against him. Without disclosure of the facts upon which the officials made their decision, the newspaper argued, the potential for a cover-up existed. Jackson resisted on the ground that neither this DCI report, nor any other, warranted release in the public interest. His argument rested on a number of DCI concerns: assuring informant confidentiality, encouraging future cooperation with the DCI, protecting persons from speculative or potentially libelous revelations, and preventing a landslide of disclosure requests by the media.

The district court found that the DCI report was protected by a qualified privilege. It concluded, however, that any harm to the public interest caused by the report's disclosure was substantially outweighed by the public interest in disclosure. Subject to the deletion of certain criminal history data, the court ordered Jackson to make the report available to the newspaper. This appeal followed.

■ I. Because mandamus is an equitable action, our review on appeal is de novo. Iowa Code § 661.3 (1993); *Nowlin v. Scurr*, 331 N.W.2d 394, 396 (Iowa 1983). We give weight to the district court's fact-findings but are not bound by them. *Id.*

II. Jackson and the Department of Public Safety rest their case for nondisclosure on Iowa Code sections 22.7 and 622.11. Section 22.7 states in pertinent part:

The following public records shall be kept confidential, *unless otherwise ordered by a court,* by the lawful custodian of the records, or by another person duly authorized to release such information:

. . . .

5. Peace officers' investigative reports, except where disclosure is authorized elsewhere in this Code. However, the date, time, specific location, and immediate facts and circumstances surrounding a crime or incident shall not be kept confidential under this section, except in those unusual circumstances where disclosure would plainly and seriously jeopardize an investigation or pose a clear and present danger to the safety of an individual.

(Emphasis added.) Section 622.11 reads:

A public officer cannot be examined as to communications made to the public offi-

cer in official confidence, when the public interests would suffer by the disclosure.

In *State ex rel. Shanahan v. Iowa District Court*, 356 N.W.2d 523, 528 (Iowa 1984), we observed that these two statutory provisions express essentially the same legislative purpose with respect to DCI files: assurance to all persons upon whom law enforcement officials rely that "official confidentiality attends their conversations and may protect from public access the officers' reports of what they have said." *Id.* The privilege cloaking these communications, however, is qualified, not absolute. *Id.* at 527. An official claiming the privilege must satisfy a three-part test: (1) a public officer is being examined, (2) the communication was made in official confidence, and (3) the public interest would suffer by disclosure. *Id.* at 527; *accord Shannon v. Hansen*, 469 N.W.2d 412, 414 (Iowa 1991).

Only the third part of the test concerns us here. Determining where the line falls between public harm and public good requires weighing the relative merits of the interests at stake. We have long recognized that confidentiality encourages persons to come forward with information, whether substantiated or not, that might be used to solve crimes and deter criminal activity. *Shanahan*, 356 N.W.2d at 529. Secrecy is especially vital where reports are based on confidential informants, persons indispensable to successful police work but who frequently fear intimidation and reprisal. *Id.* at 529–30. Furthermore, nondisclosure permits law enforcement officials the necessary privacy to discuss findings and theories about cases under investigation. *Id.* at 529.

We have also held, however, that these important aids to effective law enforcement comprise only *one* factor to be considered by the court and are "not determinative as to the 'public interest' test." *Shannon*, 469 N.W.2d at 415. Other case-specific factors, such as the nature of the investigation and whether it is completed or ongoing, may tip the balance in favor of public disclosure. *See id.*

III. Turning to the record before us, we are convinced the court wisely rejected Jackson's blanket claim of privilege. Appellants' reasons for protecting the confidentiality of the DCI report, while not insubstantial, do not justify nondisclosure under the unique facts of this case.

First, the compelling reasons ordinarily underlying the need for witness confidentiality are absent. Only Swore and one other witness expressed any concern about giving a statement. In each case the reluctance stemmed solely from uncertainty about their upcoming roles in the civil litigation, not concern over intimidation or retaliation. Both ultimately testified publicly in the civil trial, as did ten persons out of the total of fourteen interviewed by Kisner. No confidential informants were used in the investigation.

Second, the record reflects that the newspaper's inquiry arose only after official investigation into the Swore incident had ceased. Kisner reported that he closed the DCI file following the decision not to prosecute. Jackson expressed his belief that any reconsideration of his decision would be barred by the applicable statute of limitations for assault. He was unaware of any pending federal charges arising out of the same incident. Thus any claim that an on-going investigation might be hindered by disclosure of the report is unsubstantiated.

Third, the appellants made no showing that the DCI report contained hearsay, rumor, or libelous comment. Because the focus of the investigation rested solely on Swore, no legitimate concerns exist over named but innocent suspects. Kisner's report contained no subjective theories, conclusions, or recommendations, thus minimizing the need for secrecy present in most investigations.

The district court properly weighed the foregoing facts against the newspaper's proof that the public interest would be harmed by denial of access to the DCI file. *See Shanahan*, 356 N.W.2d at 530. The record reveals that community interest and concern over allegations of police brutality, already piqued by the events in Los Angeles, was heightened by the suit against Swore. This interest grew upon the filing of a second civil suit against him. Mertens testified that, once the jury reached a verdict in apparent conflict

with city officials' decisions, the newspaper received many more letters to the editor expressing concern over both incidents.

 There can be little doubt that allegations of leniency or cover-up with respect to the disciplining of those sworn to enforce the law are matters of great public concern. This fact is underscored by Patton and Jackson's own testimony regarding the immediate action taken upon hearing Swore was accused of using excessive force.

■ Appellants nevertheless claim that the newspaper's need for disclosure is slight because the same information could have been gained from trial testimony or the newspaper's own private interviews. It is true that existence of an alternate means of access to essentially the same information is a factor to be weighed in determining whether disclosure is warranted. *Id.* at 531. But motivating the newspaper's claim is its concern that the information contained in the DCI report may *not* be similar to that revealed at trial or secured by reporters outside the courtroom. That suspicion is only strengthened by the jury's verdict. So long as it is barred from seeing the report, the newspaper is effectively prevented from assessing the reasonableness of the official action. Like the district court, we believe that neither the trial testimony nor independent witness interviews would shed light on that assessment.

■ Finally, we reject appellants' contention that the newspapers' interest in the report is lower—and thus less compelling—than the interest of the plaintiff in *Shanahan,* a litigant seeking discovery relevant to his civil lawsuit. Release of the report does not depend on the status of the party seeking it. *Northeast Council on Substance Abuse, Inc. v. Iowa Dep't of Public Health,* 513 N.W.2d 757, 761 (Iowa 1994). The newspaper has the same right of access as any member of the general public. *See Head v. Colloton,* 331 N.W.2d 870, 874 (Iowa 1983). It is in that representative capacity that its interest in disclosure must be evaluated.

In summary, our de novo review of this record leads us to the same conclusion reached by the district court. Under the unique facts of this case, any public harm created by the disclosure of the DCI investigatory report is far outweighed by the public harm accruing from its nondisclosure. The district court's order compelling disclosure is therefore affirmed.

**AFFIRMED.**