472

# AGNEW, Respondent, v. AGNEW, Appellant.

## (218. N. W. 633.)

(File No. 6441.   Opinion filed March 24, 1928.)

*Gardner & Churchill* and *Null & Royhl,* all of Huron, for Appellant.

*C. H. March,* of Litchfield, Minn., *C. C. Fritzel,* of De Smet, and *C. A. Kelley* and *Chas. P. Warren,* both of Huron, for Respondent.

MISER, C.   William J. Agnew died at Bancroft, Kingsbury county, S. D., January 31, 1925.   On May 12, 1925, an order of the county court of said county was made appointing John F. Agnew, a brother of said deceased, as administrator of said estate. Deceased left an estate in said county of approximately $100,000. On June 30, 1925, Ida M. Agnew filed in the county court a petition for family allowance, representing therein that petitioner, Ida M. Agnew, was the surviving widow of the deceased, and that she was the guardian of the three minor children of petitioner and deceased, residing with petitioner at Litchfield, Minn., and that said children and petitioner constituted the family of deceased; and petitioner, in her own behalf and as guardian of said children, asked the court to allow to them, as the family of the said deceased, the sum of $200 per month during the settlement of said estate.   Said administrator, personally and as administrator, made an answer to the petition for family allowance, denying that petitioner, Ida M. Agnew, is the widow of the decedent, and denying that the minor children named in petitioner's petition are the heirs at law of decedent, and denied that said petitioner or said children are entitled to an allowance as the family of the deceased.   Thereafter, trial was had in the county court, and findings made by said court wherein it was found that the petitioner, Ida M. Agnew, is not the widow of William J. Agnew, deceased, and was never married to him, and that the minor children of petitioner are not the heirs at law of said deceased.   On these findings, it was decreed by the county court that the application for a family allowance be denied and dismissed.

Thereafter respondent petitioner, as an individual and as guardian of the minors aforesaid, appealed from said decision and order of the county court to the circuit court of Kingsbury county; and thereafter, on December 28, 1925, trial de novo was had in the circuit court.   At the trial, certain interrogatories were submitted to the jury for an advisory verdict; and thereafter the circuit court made its findings of fact, conclusions of law, and judgment, by which judgment the order of the county court denying the petition of respondent for a family allowance was vacated

and reversed, and there was awarded as a family allowance the sum of $200 per month. Thereafter appellant administrator moved for a new trial; and, from the order overruling appellant's motion for a new trial and from the judgment of the circuit court this appeal is taken.

It is conceded that there was never a ceremonial marriage between William J. Agnew and respondent, who was known, prior to January, 1915, as Ida M. Rusch. It is conceded that, from January, 1912, until about January, 1915, the relations between deceased and respondent, both of whom resided at Bancroft, Kingsbury county, S. D., were illicit, and that, before leaving Bancroft in January, 1915, respondent had given birth to two children, and, after moving to Litchfield, she gave birth to another child, all of whom, since moving to Litchfield, have been known by the name of Agnew. The circuit court, in its findings, approved and adopted the findings of the jury that, on or about January 15, 1915, the illicit relations between respondent and William J. Agnew ceased by the parties entering into a marriage contract pursuant to which they entered into marital relations and thereafter held themselves out to the public as husband and wife; and the court concluded from findings therein made that respondent was the wife of deceased at the time of his death, and that the said minor children were the natural children and became the legitimate children of deceased by reason of such marriage, and that said surviving widow and children constitute the family of said deceased and are reasonably entitled to an allowance. Appellant set out 26 assignments of error; but respondent contends that appellant is wholly without authority to take or maintain this appeal. This contention of respondent must first be considered.

It will be observed that the answer to respondent's petition for family allowance in county court was made by John F. Agnew personally and as administrator of the estate of William J. Agnew, deceased, and consists of a denial that respondent is the widow of the decedent or that the minor children of respondent are the heirs at law of decedent. In the order denying petition for family allowance in county court, as well as in the judgment rendered in circuit court, the defendants named, in addition to the administrator, are heirs of deceased if respondent and her children are not his heirs at law. The motion to vacate and set aside the find-

ings of fact, conclusions of law, and judgment in the circuit court was made by the administrator, and his motion was overruled; and said defendant as such administrator, alone filed notice of appeal and perfected this appeal to this court.

In support of respondent's contention that the administrator is without authority to maintain this appeal, respondent cites numerous cases, and particularly refers to Bates v. Ryberg, 40 Cal. 463; Merrifield v. Longmire, 66 Cal. 180, 4 P. 1176; Goldtree v. Thompson, 83 Cal. 420, 23 P. 383, cited by this court in Schlegel v. Sisson, 8 S. D. 476, 66 N. W. 1087; Stilphen's Appeal, 100 Me. 146, 60 A. 888, 4 Ann. Cas. 158; Bryant v. Thompson, 128 N. Y. 426, 28 N. E. 522, 13 L. R. A. 745; Roach, Administrator, v. Coffey, 73 Cal. 281, 14 P. 840. The general purport of all the decisions so cited is expressed in Bates v. Ryberg, supra, as follows:

"The heirs and devisees or legatees * * * are made parties to the proceedings for a distribution; any one of them feeling aggrieved may appeal from the final order. The executor, however, does not represent any of these parties, as against the others, and if they are satisfied with the distribution he cannot complain because some have received less than they are entitled to. He cannot litigate the claims of one set of legatees as against the others at the expense of the estate."

Appellant points out, however, that he is not here appealing from a decree of distribution. Appellant urges that, in the instant case, the allowance made by the court imperiled the rights of others than the heirs; that it imperiled the rights of creditors and claimants, the right of the administrator to his fees, the right of cash funds sufficient to carry on a large estate, heavily incumbered; that it imperiled the costs of administration, of state inheritance and federal estate taxes yet remaining unsettled because of undetermined adjudication of heirship. Appellant cites Gorham v. Gorham, 54 Ind. App. 408, 103 N. E. 16, in support of his contention that—

"It is his duty to guard and protect the estate which he represents against those who may seek to diminish it by presenting fraudulent, illegal, or unfounded claims for allowance."

See, also, In re Freud, 131 Cal. 667, 63 P. 1080, 82 Am. St. Rep. 407; Henderson Trust Co. v. Stuart, 108 Ky. 167, 55 S. W.

1082, 48 L. R. A. 49;. Winchell v. Sanger, 73 Conn. 399, 47 A. 706, 66 L. R. A. 935. . Granting that the duty of an administrator does not ordinarily require or permit him to appeal from a decree of distribution, it is none the less true that—

"Executors and administrators have, * * * frequently been allowed to appeal from judgments which affect the estates of their decedents or themselves personally." 2 R. C. L. 54.

Inasmuch as respondent has cited numerous California cases, upon three of which this court relied in Schlegel v. Sisson, supra, the following more recent California decisions declaring the right and the duty of the administrator to appeal are of interest: In re Heydenfeldt's Estate, 117 Cal. 551, 49 P. 713; In re Snowball's Estate, 156 Cal. 235, 104 P. 446; Estate of Levy, 141 Cal. 646, 75 P. 301, 99 Am. St. Rep. 92. Of particular interest is the case of in re Heydenfeldt's Estate, because of the discussion therein of Roach v. Coffey, cited herein by respondent, and of Bates v. Ryberg, cited by respondent and cited by this court in Schlegel v. Sisson. Therein, after quoting from Bates v. Ryberg as hereinbefore quoted, Justice Temple, who wrote the opinion, said:

"I think there has been a disposition to carry the doctrine of that case beyond its legitimate scope, and further than it should be carried on principle. An administrator or an executor is a trustee of an express trust. * * * He not only may, but it is his duty, to defend the estate from all unjust and illegal attacks made upon it which affect the interests of heirs, devisees, or legatees or creditors. * * * I cannot see that it matters that a claim is made against the estate under the will, or by one who claims to be an heir, or a part of the family of the deceased, and as such entitled to an allowance. If it may diminish the estate to be finally distributed, or may make the fund from which the creditors are to be paid insufficient for that purpose, the administrator is interested, and, in the event of an adverse ruling, is a party aggrieved."

The following cases either cite with approval the Heydenfeldt Case or are in harmony with it on the proposition that an administrator, in his representative capacity, may be aggrieved within the meaning of the appeal statute: Rhode Island Hospital Trust Co. v. Hopkins, 38 R. I. 59, 94 A. 724, 728; Levy v. Williams, 9 S. C. 153; Sturtevant v. Wentworth, 226 Mass. 459, 115 N. E. 927; Packer v. Overton, 200 Iowa 620, 203 N. W. 307; Leighton v.

Leighton, 193 Iowa 1299, 188 N. W. 922; In re Cannon's Estate, 18 Wash. 101, 50 P. 1021; In re Forney's Estate, 44 Nev. 279, 194 P. 332; Denison v. Jerome, 43 Colo. 456, 96 P. 166, 168; Hall v. Burgess, 40 R. I. 314, 100 A, 1013.

Respondent contends, however, that this court, in Schlegel v. Sisson, 8 S. D. 476, 66 N. W. 1087, has determined this question against appellant. However, the decision in that case was based on California cases whose doctrine has been limited in the more recent cases of Heydenfeldt's Estate and Snowball's Estate. In the Revised Edition of Hayne on New Trial and Appeal, pp. 1070-1075, the revisers review the three California cases cited by this court in Schlegel v. Sisson, as well as Roach v. Coffey, cited by respondent, and the Heydenfeldt Case, cited by appellant, and numerous other cases, and conclude that the harshness of the doctrine of Bates v. Ryberg has been mitigated by more recent cases and particularly the Heydenfeldt Case. It is true that, in the case of Hanson's Estate, 38 S. D. 1, 159 N. W. 399, motion was granted to dismiss the appeal of an executor on the authority of Schlegel v. Sisson. Whether it be true, as therein stated, that the beneficiary appellant was the only appellant interested in the matter presented by that appeal, it is certainly true that, when the beneficiary appellant had promptly and sufficiently, without expense to the estate, perfected its appeal from a decree of the county court adjudging invalid a will of which appellant was beneficiary, there was no necessity for the executor appealing in his representative capacity. Furthermore, in that case, the beneficiary appellant was granted a reversal of the judgment which the executor appellant had also sought to have reversed. Whether or not the Hanson Case involved an extension of the doctrine of Bates v. Ryberg beyond its legitimate scope, we are satisfied, from the difference in the facts, that it would involve an even greater extension of that doctrine to apply it to the case at bar. Furthermore, while this court did not, in the two appeals of Gillette v. McLaughlin, 43 S. D. 509, 180 N. W. 952, and Id., 44 S. D. 499, 184 N. W. 277, decide the point here presented, each appeal was by an executor; and the latter appeal resulted in a reversal of a decree setting aside a will. In this case, the appointment of appellant as administrator is inconsistent with respondent's claims; respondent's petition for letters of administration and objections to appellant's appointment

were withdrawn by her in person at her written request, subscribed and sworn to by her before the county judge; respondent had accepted from a brother of appellant, in appellant's presence, and has not returned, the sum of $10,500 paid in settlement of her claim against the estate as decedent's widow. Although respondent contends, and the trial court found, such statement to have been procured by deceit, respondent admittedly signed a statement on the day she received the sum of $10,500 that her relationship to deceased was never, at any time, that of a wife either by ceremonial or common-law marriage. Furthermore, appellant well knew that, during all the years of the alleged common-law relationship, decedent lived, not at Litchfield, Minn., where respondent lived, but at Bancroft, S. D., and, save for occasional visits elsewhere, slept in a room in the same suite with appellant. Without determining at this point the question of whether respondent is the widow of deceased, but considering the facts of this case only in their bearing upon the authority of the administrator to appeal, it is apparent that the facts are so different from the facts in Schlegel v. Sisson and In re Hanson as to materially reduce the value of said cases as precedents.

We therefore conclude that to apply the doctrine of Bates v. Ryberg, followed by this court in Schlegel v. Sisson, to the case at bar, would be to extend it beyond its legitimate scope and beyond that sanctioned by the weight of authority, that to determine that appellant has no right to appeal because he is not aggrieved is to determine in advance the merits of the appeal (In re Estate of Heaton, 139 Cal. 237, 73 P. 186; State ex rel Benz v. Probate Court, 133 Minn. 124, 155 N. W. 906, 158 N. W. 234; Burmeister v. Gust, 117 Minn. 247, 135 N. W. 980; Green v. Blackwell, 32 N. J. Eq. 768, 772), and that the administrator has authority to maintain this appeal, being subject to the closest judicial scrutiny in his administrative acts (Clifton v. Keeler, 158 Mich. 615, 123 N. W. 22).

■ On April 20, 1925, respondent signed and acknowledged before the county judge two instruments, Exhibits 5 and 8. Exhibit 5 is the withdrawal of her petition for letter of administration and of her objections to appellant's appointment. Exhibit 8 is a request that the five attorneys theretofore representing her be no longer recognized as her attorneys. After Exhibit 8 had been

acknowledged by respondent before the county judge and presented to him, he executed an order which was therewith presented to him, declaring said attorneys to be discharged. It is apparent that there is some confusion in the record as to Exhibits 5 and 9, the county judge testifying that Exhibit 5 is a duplicate of Exhibit 9. It is apparent that Exhibit 5 is not a duplicate of Exhibit 9, and equally apparent that, in the testimony hereinafter set out, the witness is testifying concerning Exhibit 5, to wit, the withdrawal of her petition. After the county judge had testified at the trial as to the execution of these various instruments and that the contents of those signed by respondent were made known to her before she signed them, the following question was asked him:

"Q. What conversation did you have with her at or prior to the time she executed this instrument marked Exhibit No. 5 [9]? A. I object to answering that question as a privileged communication with a public officer.

"By the Court: Sustained subject to authorities presented.

"Q. Judge, will you state whether the conversation you had with her had reference to her relation to the deceased, William J. Agnew? A. It had.

"Q. Well, I will ask you whether or not it had reference as to whether or not, at the time of his death or prior thereto, she was married to him either by ceremony or by contract."

This was objected to and the objection sustained, and thereafter, after said exhibits were received in evidence, the court finally sustained, as privileged, the witness' objection to testifying; whereupon defendant offered to show by said witness that, if required to testify and the privileged claimed by him denied, he would, in substance, testify that, on that occasion, the witness said to respondent:

"Before taking any action in the matters of this estate and your application to withdraw your application for letters of administration and to withdraw your objection to the granting of letters of administration to John F. Agnew, I want to know the facts with reference to your relations with William J. Agnew, deceased. Were you and he in fact ever married, either by ceremony or by contract in writing or by oral agreement, followed by a cohabitation together as husband and wife or otherwise?

And respondent, replying thereto, in substance said:

"No; I was never married to Mr. William J. Agnew in any form, and never had any agreement in writing or otherwise by which we agreed to become or would become husband and wife," —to which offer of proof respondent objected, whereupon the offers of proof were rejected and denied by the court.

This alleged conversation followed a discussion of the settlement then being perfected between respondent and one of the brothers of deceased, and followed a discussion between witness and another who appeared there with respondent and ostensibly in her behalf, relating to such settlement, and preceded the withdrawal of her petition for letters of administration then pending, and preceded the withdrawal of her objections to appellant's petition, which was thereafter granted by the county court. This alleged conversation was held in the presence of no one excepting the witness and respondent.

Respondent claims that the conversation inquired about was privileged under both subdivision 1 and 4 of section 2730, R. C. We are of the opinion that, if this communication was privileged, it can only be by virtue of subdivision 4, which is as follows:

"A public officer cannot be examined as to communications made to him in an official confidence, when the public interests would suffer by the disclosure."

This subdivision 4 and subdivision 5, § 1881, California Code Civ. Proc., enacted in 1872, are identical. Neither statute has been judicially construed. In State v. Hoben, 36 Utah, 186, 102 P. 1000, the Supreme Court of Utah considered a statute very similar, and said:

"That subdivision relates especially to matters pertaining to the affairs of the state or nation, or concerning state secrets, and communications by informers to public officials. The evidence is excluded because it would prejudice the interests of the public, and because public safety is best subserved by keeping out such evidence. Jones, Ev. (2d Ed.) § 762; 2 Elliott, Ev. § 639; 4 Wigmore, Ev. § 2367. It is indeed very doubtful if it was made to appear in what particular 'the public interests would suffer by the disclosure.' This subdivision * * * is not for the protection or benefit of a witness or of a party in a particular case, but the evidence is excluded upon the grounds of public policy, because of the confidential nature of such communications, when the disclos-

ure would prejudice, in the language of the statute, 'public interests.' "

To the same effect is Thaden v. Bagan, 139 Minn. 46, 165 N. W. 864. However, the learned author of Wigmore on Evidence (2d Ed.) at section 2376, answers affirmatively, citing Lindsey v. People, 66 Colo. 343, 181 P. 531, 16 A. L. R. 1250, the following question:

"Is there not a distinct principle by which communications in the nature of confessions, or similar confidences, made privately and not in open court, by parties who are implicated in a wrong or crime and desire guidance for their course of action, are privileged from disclosure by him [the judge], at his option?"

But, at section 2285, Wigmore on Evidence (2d Ed.), we find the four fundamental conditions necessary to the establishment of a privilege to be as follows:

"(1) The communications must originate in a confidence that they will not be disclosed; (2) this element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relation must be one which, in the opinion of the community, ought to be sedulously fostered; and (4) the injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation. These four conditions being present, a privilege should be recognized, and not otherwise."

Even if the limitations of our statute permitted the application of the principle approved by the learned author, it is obvious that some of these four fundamental conditions are lacking in the case at bar. Moreover, it is the general liability of every person to give testimony upon all the facts inquired of in a court of justice, and in South Dakota the exceptions thereto are specified in statutes which we are not at liberty to disregard. The conditions under which the privilege was here claimed do not show that the communication was made to the witness "in an official confidence, when the public interest would suffer by the disclosure." How the public interest would suffer by this disclosure is certainly not apparent. We therefore hold the communication not privileged, and that the court erred in not denying the claim of privilege. Inasmuch as the

vital and difficult question in this case is whether respondent was married to decedent, the error was highly prejudicial.

Because a new trial must be had, we shall not pass upon the remaining assignments of error.

The judgment and order are reversed.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.