STATE of Iowa, ex rel. Gerald SHANA-HAN, Director, and Lawrence Goepel, Special Agent, Iowa Department of Public Safety, Division of Criminal Investigation, Plaintiff,

v.

IOWA DISTRICT COURT FOR IOWA COUNTY, Defendant.

No. 83–726.

Supreme Court of Iowa.

Oct. 17, 1984.

Thomas J. Miller, Atty. Gen., and Gary L. Hayward, Asst. Atty. Gen., for plaintiff.

James R. Snyder and Mark E. Liabo of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for defendant.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, CARTER and WOLLE, JJ.

WOLLE, Justice.

In this original certiorari proceeding, we must decide whether the district court erred in requiring the State to produce a criminal investigation file for inspection by certain civil litigants. The State contends its file is protected by a qualified governmental privilege. Balancing the State's interest in confidentiality against the private litigants' interest in exhaustive discovery, we conclude that the circumstances here weigh heavily in the State's favor. We therefore sustain the writ of certiorari, holding that the State need not disclose the contents of its file.

The question of access to government records which we here decide arises from a wrongful death action which followed in the aftermath of a double homicide in a motel room. On September 13, 1980, the bodies of Roger Atkison and Rose Burkert were found in a room at the Amana Holiday Inn, the apparent victims of a brutal murder. State criminal investigators have intensively searched for clues to the murder, but the ongoing investigation has not yet been completed and no charges have yet been filed. In August of 1982, the administrator of Atkison's estate filed a wrongful death action against Holiday Inns, Inc. and its motel operator Amana Nordstrom, Inc., contending that those defendants negligently failed to secure the

motel room and thereby proximately caused Atkison's death.

The parties litigating the wrongful death action then sought discovery of the State's files concerning the ongoing homicide investigation. At the administrator's request, the district court initially issued a subpoena duces tecum to a division head at the Iowa Department of Public Safety, compelling production of the entire investigatory file. Following negotiation of a temporary accommodation, however, the State agreed to furnish to the civil litigants its officers' narratives regarding the crime scene, statements of medical examiners, the statement of a locksmith engaged by the State, and also lists of guests and employees who were staying at the motel on the night in question. The litigants reserved the right to seek further discovery, while the State reserved its right to claim privilege should other information be sought.

Thereafter, at the request of the defendants in the civil action, the court issued a second subpoena duces tecum to a special agent of the Iowa Department of Criminal Investigation (DCI) directing him to produce at a deposition all of the agency's file materials pertaining to the alleged murder. The State promptly filed a motion for a protective order which included a request that the court limit discovery to those materials already furnished by the State. The court, however, permitted considerably more discovery, requiring the State to produce for viewing by counsel summaries of each of the seven large volumes of file contents, the statements given to state agents by persons who had occupied nearby rooms, and information pertaining to the condition of the lock on the motel room door. The court also gave the litigants' attorneys permission to examine the contents of the entire file and designate those additional materials which they wished to submit to the court for *in camera* inspection and potential later production by the State.

The district court's order, which partially sustained and partially denied the State's motion for a protective order, referred only to the documents which had been subpoenaed and did not address the State's request that the special agent's deposition testimony be restricted. Consequently our focus in this certiorari action is on the documents in the DCI criminal investigation file. Despite the State's claim of privilege, the district court found the DCI file fully discoverable by the litigants in the civil action and their attorneys.

I. *Scope of Review of Issues Decided.*

■■■ Certiorari lies when the district court has exceeded its jurisdiction or has acted illegally. Iowa R.Civ.P. 306; *State v. West,* 320 N.W.2d 570, 573 (Iowa 1982); *Hadjis v. Iowa District Court,* 275 N.W.2d 763, 765 (Iowa 1979). Illegality exists when the findings on which the court has based its conclusions of law do not have substantial evidentiary support or when the court has not applied the proper rule of law. *Iowa Freedom of Information Council v. Wifvat,* 328 N.W.2d 920, 922 (Iowa 1983); *Hightower v. Peterson,* 235 N.W.2d 313, 316–17 (Iowa 1975).

■■■ The State here challenges the district court's application of the law to essentially undisputed facts. The issue of law concerns the permissible scope of discovery in a civil action in the face of a claim of privilege. Ordinarily, the district court has wide discretion in ruling upon the discoverable nature of requested information and will not be reversed in the absence of an abuse of discretion. *Farnum v. G.D. Searle & Co.,* 339 N.W.2d 384, 389 (Iowa 1983); *Pollock v. Deere and Co.,* 282 N.W.2d 735, 738 (Iowa 1979). Consequently, here we must determine whether the trial court abused its discretion and thereby acted illegally within the meaning of rule 306 in permitting the civil litigants access to privileged materials and permitting their attorneys to inspect the entire DCI file.

Both here and before the district court the State has asserted a two-level governmental privilege. It first contends that it need not disclose DCI file materials by reason of an executive privilege, derived

from the doctrine of separation of powers in both our State and federal constitutions. *See* Iowa Const. Art. III, § 1; U.S. Const. Art. I, § 1; Art. II, § 1; Art. III, § 1; *United States v. Nixon,* 418 U.S. 683, 706, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039, 1062 (1974) ("[T]he privilege can be said to derive from the supremacy of each branch within its own assigned area of constitutional duties."). *See generally* C. McCormick, Law of Evidence §§ 143–50 (1954 ed.); 8 J. Wigmore, Evidence §§ 2367–79 (McNaughton rev. ed. 1961); Annot., 10 A.L.R. 4th 355 (1981) (discussion of state law of executive privilege).

At a second level, the State contends that the confidential and privileged status of the DCI file is grounded on specific Iowa statutes. We first address and decide the second of these alternative theories of governmental privilege, because we prefer to address constitutional issues only when other grounds are not dispositive. *George H. Wentz, Inc. v. Sabasta,* 337 N.W.2d 495, 498 (Iowa 1983); *Hines v. Illinois Central Gulf Railroad,* 330 N.W.2d 284, 286 (Iowa 1983); *see United States v. Reynolds,* 345 U.S. 1, 6, 73 S.Ct. 528, 531, 97 L.Ed.2d 727, 732 (1952) (executive privilege, a broad proposition with constitutional overtones, need not be addressed when case can be decided on narrower ground).

■ Because the State's statutory claim of privilege is dispositive of this appeal, we need not reach the constitutional issue of executive privilege. Consequently our review by certiorari is at law, not the de novo review which an issue of constitutional magnitude would require. *See Hightower v. Peterson,* 235 N.W.2d at 316–17.

II. *Qualified Privilege Under Iowa Code Section 622.11.*

The State asserts that Iowa Code section 622.11 (1983) protects its criminal investigation files from disclosure to private litigants. That statute provides:

> A public officer cannot be examined as to communications made to him in official confidence, when the public interests would suffer by the disclosure.

■ Section 622.11 is identical in wording to statutes of several other states, but neither our court nor appellate courts in those states have decided the question of statutory interpretation and application which is here presented. *See* 8 J. Wigmore, *supra,* § 2378, at n. 9 (listing illustrative statutes). In general the statute is designed to protect "matters affecting the affairs of the state, as state secrets, and communications by informers." *Thaden v. Bagan,* 139 Minn. 46, 51, 165 N.W. 864, 865–66 (1917) (dictum). The interest of the public—public safety—is at stake, not the interest of the officer or the person communicating in confidence. *State v. Hoben,* 36 Utah 186, 198, 102 P. 1000, 1004–05 (1909); *accord Agnew v. Agnew,* 52 S.D. 472, 480–81, 218 N.W. 633, 636–37 (1928).

■ Even though our court has not previously interpreted this statutory privilege, the wording of the statute is sufficiently clear to enable us to describe its reach in this case. First, the cloak of protection extends only to a public officer being "examined" and prohibits "disclosure" of the protected information. Second, the protection is limited to "communications" made to the officer "in official confidence." Finally, this is not an absolute but rather is a qualified privilege, applying only "when the public interests would suffer by the disclosure." We must separately determine whether the State has shown that the circumstances of this case satisfy each of these three tests.

A. When May the Governmental Privilege Be Invoked? The first question presented by the wording of section 622.11 is whether it may be invoked by the State at any stage of a proceeding or only to prevent disclosure of privileged information during trial. The physician-patient privilege, for example, protects only against the disclosure of confidential communications when the physician is "giving testimony." Iowa Code § 622.10 (1983); *see Chidester v. Needles,* 353 N.W.2d 849, 851 (Iowa 1984); *State v. Munro,* 295 N.W.2d 437, 443 (Iowa 1980).

██ The wording of the statute which creates this privilege, as well as its public purpose, requires a broader and more protective interpretation than that given the physician-patient privilege. Section 622.11 not only states that the public officer "cannot be examined" but also emphasizes protection against "the disclosure." This clearly suggests that the privilege targets and protects the communication itself, including any written report of the communication, and not just oral examination of the public officer. Therefore when the State can satisfy the other prerequisites for shielding from disclosure confidential communications to a public officer, the privilege may be invoked at any stage of proceedings where confidential communications would otherwise be disclosed, not just when a witness is testifying. Here, the State did not act prematurely in invoking the privilege during the discovery phase of the civil litigation. The State properly relied upon the statutory privilege of section 622.11 in its motion for a protective order pertaining to the litigants' attempt to subpoena the records in the DCI file.

B. How Broad is the Qualified Privilege? DCI criminal investigation files contain information which the investigating officers have gleaned from communications with other persons. The "communications" which are targeted for protection by section 622.11 are those made to the public officer "in official confidence." In determining whether communications made to DCI officers fit that description, we must decide whether persons providing information to DCI investigators are communicating "in official confidence."

Iowa's freedom of information statute, Iowa Code chapter 68A, sheds important light on this question. Its purpose generally is to open the doors of government to public scrutiny and prevent government from secreting its decisionmaking activities from the public. *Head v. Colloton,* 331 N.W.2d 870, 873–74 (Iowa 1983); *Iowa Civil Rights Commission v. City of Des Moines,* 313 N.W.2d 491, 495 (Iowa 1981). In enacting that law, however, our legislature carved out several categories of "confidential records" which are exempted from the public's right of access to government records. The category of confidential records pertinent here is described as follows in Iowa Code section 68A.7(5):

> The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release information:

> . . . .

> 5. Peace officers' investigative reports, except where disclosure is authorized elsewhere in this Code. However, the date, time, specific location, and immediate facts and circumstances surrounding a crime or incident shall not be kept confidential under this section, except in those unusual circumstances where disclosure would plainly and seriously jeopardize an investigation or pose a clear and present danger to the safety of an individual.

The exception stated in the last sentence is not pertinent here because at an early stage of its investigation the DCI released that basic data about the underlying double homicide here being investigated. This statute, which provides for confidentiality of peace officer reports, and section 622.11, which creates a public officer privilege for confidential communications, are two expressions of essentially the same legislative purpose with regard to DCI files. Both serve to assure all those persons upon whom law enforcement officers rely for information, as well as the officers themselves, that official confidentiality attends their conversations and may protect from public access the officers' reports of what they have said. Both statutes label as confidential information about criminal activity or crimes which DCI agents receive from other persons and record as a part of their files.

██ We conclude that the DCI files here would properly be protected from public disclosure by Iowa Code section 68A.7 and therefore were also subject to the qual-

ified privilege of Iowa Code section 622.11. The question remaining is whether the State also met the third test of this statutory privilege, the required showing that public interests would suffer by the disclosure of the information sought by the litigants in this case.

■ C. Would Public Interests Suffer by Disclosure? Several public interests are implicated by the State's assertion of a privilege not to disclose information in its DCI files. In determining whether and to what extent the State may maintain the secrecy of its DCI file in this case, we must consider the adverse effect release of that information to the litigants may have on DCI criminal investigations in general, not just the possible adverse effect release might have on the investigation of this particular double homicide. We must also consider the importance of the information to these particular civil litigants and the public interest that might be served by allowing civil litigants to discover every person's evidence, including that of State agents, in judicial proceedings generally.

In undertaking this sensitive weighing process, we first return to the statutes which undergird the privilege and make confidential the DCI files, Iowa Code sections 622.11 and 68A.7(5). The legislature clearly intended by those statutes that DCI investigators and other peace officers should ordinarily be allowed to perform much of their investigatory work in secret and have their sensitive files concerning their investigation protected from public disclosure. Surely one purpose of permitting the State to keep its files confidential and invoke the public officer privilege was to encourage persons to come forward with information which might be used to solve crimes and deter criminal activity. Another purpose would be to allow fellow officers privately and confidentially to discuss and record their findings and theories about each case which is under investigation.

Even in the absence of controlling statutes, courts have recognized this important public purpose of allowing criminal investi-

gation to be conducted in relative secrecy. As concisely stated in *Black v. Sheraton Corporation of America*, 50 F.R.D. 130 (D.D.C.1970):

> The results of investigations of alleged criminal activity are by their nature the type of information that the public interest requires be kept secret.

*Id.* at 133; *see Crawford v. Dominic*, 469 F.Supp. 260, 264 (E.D.Pa.1979) ("Clearly the public has the strongest interest in maintaining the confidentiality of police files when those files concern an ongoing criminal investigation.").

■ The homicides which the DCI was investigating in this case were very serious crimes. Iowa has no criminal statute of limitations barring prosecution of whomever may be charged with first or second degree murder. *See* Iowa Code § 802.1 (1983). The investigation of these crimes by DCI investigators is continuing and ongoing. Voluminous DCI files in this case reflect a considerable investment of State resources and manpower in this investigation. The State need not conclusively prove that disclosure to the litigants of some specific part of this file might jeopardize its overall investigation. We are satisfied that this DCI file concerning an intensive investigation of a double homicide deserves a substantial measure of confidentiality. Pertinent here is what we said in *State v. Eads*, 166 N.W.2d 766 (Iowa 1969), concerning the sensitivity of all criminal investigation materials:

> Under ordinary circumstances the investigation [of crime] starts on a broad scale and gradually narrows itself as the officers zero in on prime suspects. There is much in the investigating officer's report which is his unsupported theory and much more which is hearsay and rumor. Furthermore the reports are frequently based on material—or tips—from informers, who may be despised by friend and foe alike but who are nevertheless sometimes indispensable to successful police work. A routine disclosure of their identity upon a defendant's request would instantaneously eliminate that necessary

source of information. Here, too, we might add, lies the real threat of intimidation and reprisal which the opponents of discovery fear.

*Id.* at 774.

It is also noteworthy that much of the information which the litigants here have asked to examine in their dragnet discovery request could not even be obtained in pretrial discovery by a person charged with these murders. *See State v. Groscost*, 355 N.W.2d 32, 36 (Iowa 1984) (in murder prosecution, defendant may be denied pretrial discovery of reports of DCI agents or interview summaries of witnesses); *State v. Horn*, 282 N.W.2d 717, 721 (Iowa 1979) (explaining the circumstances under which criminal defendants may obtain statements of witnesses before and during trial). The cited cases reflect our continuing recognition that the State has a very real interest in protecting the relative secrecy of much of the information its agents gather, analyze, and record during their investigation of criminal activity and crimes.

Satisfied that the State has a real and important interest in maintaining the confidential status of this and other DCI files, we turn to the private and public interests which the litigants contend would be adversely affected by denying them access to the information they seek.

The litigants first contend they should be allowed to discover and use file materials developed by DCI investigators because our civil rules permit wide-ranging discovery. Iowa Rule of Civil Procedure 122(a) provides in pertinent part:

> Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action, .... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(Emphasis added). That rule clearly does describe a very wide scope of permissible discovery in civil litigation, but it explicitly excepts from discovery privileged information. If the State's claim of privilege should have been upheld, the scope of discovery otherwise permitted pales in significance.

■■ The litigants correctly observe that rule 122(a) permits them to discover information regardless of its relevance and admissibility in their civil lawsuit if the information "appears reasonably calculated to lead to the discovery of admissible evidence." Because they have not yet seen the additional documents which they have sought by subpoena duces tecum, we cannot fairly require that they prove the documents may lead to relevant information. We should, however, assess whether the DCI file is a critical source of information for the civil litigants as they prepare to try the issues framed by the pleadings in their civil action. In that connection, we note that the factual questions in the civil action are much narrower and quite different from those which the State was investigating. The civil litigation will turn on the question whether the motel owner and operator negligently failed to provide a reasonably safe and secure room for the motel guests. It is significant that there is little in the record to show that the civil litigants have exhausted methods for obtaining essentially the same information they now seek from DCI files, by going to other sources, some of which are more direct sources than the DCI file.

■■ The State, in its attempt to cooperate with the litigants, provided them at an early stage of the civil litigation with officers' narratives concerning the scene of the crime, statements of medical examiners, the statement of a locksmith engaged by the State, and lists of all guests and employees at the motel on the night of the homicides. The litigants have emphasized how broad is the scope of permissible discovery in civil actions, but that broad scope itself has presented the litigants with several alternatives for obtaining the same information they now seek to capture from the State's files. For example, the litigants have had the right to depose persons whom DCI agents have interviewed. They may

obtain an order permitting inspection of the motel premises. *See* Iowa R.Civ.P. 129–31. They may retain experts, even the same expert used by the State, to determine the condition of the motel room lock. The litigants here have simply not made a sufficiently strong showing of need for the materials in the State's file to overcome the State's interest in preserving the confidentiality of those files.

▆▆▆▆▆ The litigants forcefully urge upon us the fundamental principle that ordinarily a private litigant is entitled to discover and use every person's evidence. We have joined with other courts and commentators in recognizing that the important truth-seeking process of our judicial system requires that litigants be given wide access to sources of relevant information. *Mason v. Robinson,* 340 N.W.2d 236, 242 (Iowa 1983) (principle of every person's evidence balanced against rights of reluctant expert witness); *Lamberto v. Bown,* 326 N.W.2d 305, 306–07 (Iowa 1982) (principle of every person's evidence balanced against first amendment rights of newspaper reporter); *see Trammel v. U.S.,* 445 U.S. 40, 53, 100 S.Ct. 906, 912, 63 L.Ed.2d 186, 196 (1980) (need for probative evidence sufficient to justify modifying spousal privilege); 8 J. Wigmore, *supra,* § 2192, at 72–73. That principle, however, is not absolute but must be balanced against other public interests. Because the litigants have not shown that the information in the DCI file is critical to a thorough presentation of the factual circumstances in their civil lawsuit, and because they have not made a sufficient showing that they cannot gain access to essentially the same information from other sources, we conclude that this case presents an exception to the principle that litigants may ordinarily obtain every person's evidence.

The litigants cite a number of cases in which the parties seeking access to the governmental records had, in the underlying civil action, sought damages from the custodians of those records on grounds of official misconduct. *Crawford v. Dominic,* 469 F.Supp. at 264 (police files discoverable when plaintiffs claiming damages arising from civil rights violations); *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 343–44 (E.D.Pa. 1973) (setting forth the factors to be weighed in determining discoverability of police records in civil rights action); *Tighe v. Honolulu,* 55 Hawaii 420, 429, 520 P.2d 1345, 1351 (1974) (police records discoverable in civil rights action). The alleged wrongdoing by public officials was an important factor which those courts weighed in the balance before ordering disclosure. Those cases are inapposite here because no one contends the DCI investigators invoked the public officer privilege to conceal evidence of their own wrongdoing.

▆▆▆ We hold that the district court abused its discretion in ordering the DCI to give the civil litigants and their attorneys access to the entire criminal investigation file. The statutory privilege of Iowa Code section 622.11, which the State properly invoked, should have been upheld and enforced. The district court should have sustained the State's motion for a protective order to the extent that it sought to deny the civil litigants access to DCI file materials not already disclosed voluntarily to them. If the civil litigants after remand of this case proceed to schedule depositions of DCI agents, the court shall hold another hearing on the State's motion for protective order and then decide whether other limitations on such depositions, including those suggested in the State's motion for a protective order but not addressed by the district court, should now be sustained. In ruling on matters contained in the State's motion for protective order, the district court should be guided by our determination here that the litigants are not entitled to any additional documents in the DCI files, nor information contained in those documents which the State has not previously disclosed voluntarily to the civil litigants.

The writ of certiorari is sustained and the district court's order requiring the State to disclose additional file materials to the litigants is annulled.

WRIT SUSTAINED.