# IN THE COURT OF APPEALS OF IOWA

No. 22-0355
Filed July 13, 2023

**JASON CARTER,**
        Plaintiff-Appellant,

**vs.**

**BILLY DEAN CARTER, BILL G. CARTER, and the ESTATE OF SHIRLEY D. CARTER, by and through BILL G. CARTER, Executor,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Marion County, Jeffrey D. Farrell, Judge.

        Jason Carter appeals the order granting summary judgment and dismissing an equitable action to vacate the final judgment entered in a separate action. **AFFIRMED.**

        Alison F. Kanne of Wandro & Associates, P.C., and Christine E. Branstad and Nathan A. Olson of Brandstad & Olson, Des Moines, for appellant.

        Mark E. Weinhardt and David N. Fautsch of The Weinhardt Law Firm, Des Moines, for appellees.

        Heard by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Jason Carter filed this equitable action to vacate the judgment entered against him in *Carter v. Carter*, 957 N.W.2d 623, 646 (Iowa 2021). The district court granted summary judgment for the defendants and dismissed the action. On appeal, Jason contends the district court abused its discretion in denying his request for limited discovery on his claim of extrinsic fraud. He also contends the court erred by finding he failed to show evidence of extrinsic fraud and his claim of newly discovered evidence is barred by collateral estoppel. Because the district court acted within its discretion in denying limited discovery and properly granted summary judgment on both claims, we affirm.

**I. Background Facts and Proceedings.**

Shirley Carter was alone in the home she shared with her husband, Bill, when she was shot and killed during an apparent burglary in July 2015. Her son, Jason, claimed he found his mother dead in the kitchen when he arrived at his parents' home just after 11:00 a.m. Jason first called his sister before calling 911 three minutes later. Bill returned home a short time later.

During the ensuing criminal investigation, it was determined that Shirley was fatally shot twice. Fragments from recovered bullets showed Shirley was shot by a high-powered rifle consistent with the .270 Remington that was discovered missing from Bill's gun safe. Jason's fingerprints were found on the safe.[1]

---

[1] Jason told law enforcement that before his mother's murder, he was not aware his parents owned a gun safe. Bill, however, thought that the gun safe was a gift from Jason and his wife. Jason's fingerprints were located on a part of the safe that someone assembling it would touch.

Six months after Shirley was killed, law enforcement had not made an arrest. But Bill, his son, Billy, and Shirley's estate sued Jason for wrongful death, alleging that he shot and killed Shirley. The plaintiffs subpoenaed the entire file of the investigation into Shirley's homicide from the Iowa Department of Criminal Investigation (DCI). Although the criminal investigation was ongoing, the DCI agreed to share some of its file. The plaintiffs served DCI a second subpoena to obtain the agreed-upon documents. Jason, who favored an "all or nothing" approach to discovery, moved to quash the subpoena, which the court denied.

The wrongful-death action proceeded to a jury trial in December 2017. The jury found Jason liable for Shirley's death and awarded the plaintiffs $10,250,002 in damages.

Three days after the jury returned the civil verdict, the State charged Jason with first-degree murder in connection with Shirley's death. Discovery in the criminal case began in February 2018. That same month, the court denied Jason's motion for judgment notwithstanding the verdict in the civil case.

During the discovery process in the criminal case, the State produced documents that Jason believed would have changed the outcome of trial in the wrongful-death action. He petitioned to vacate the judgment based on newly discovered evidence. The court dismissed the petition in January 2019.

In March 2019, a jury acquitted Jason of all criminal charges related to his mother's death. After his acquittal, Jason filed a second petition to vacate the civil judgment based on newly discovered evidence. But because Jason's petition was filed more than one year after final judgment, the court denied it. Jason appealed.

In March 2020, Jason filed this action to vacate the civil judgment under the court's equitable powers. He alleged the grounds for vacating judgment existed in the year following the civil trial but could not have been discovered with reasonable diligence. The defendants moved to dismiss the action, but the district court found Jason had pled a valid cause of action and denied the motion.

The court stayed the proceedings in Jason's action to vacate while the wrongful-death action was on appeal. The supreme court affirmed that judgment in March 2021. *Carter*, 957 N.W.2d at 646. Once the district court lifted the stay in the equitable action, the defendants moved for summary judgment. They argued that Jason's petition failed to allege extrinsic fraud, which is required, instead raising only a claim of newly discovered evidence. In the alternative, they argued that the decision in *Carter* foreclosed Jason's claim of newly discovered evidence. Jason resisted the motion. At the same time, he amended his petition to allege that the civil judgment was procured by extrinsic fraud and moved for limited discovery to find more evidence supporting his extrinsic-fraud claim.

The district court held a hearing on the pending motions in November 2021. In the ruling that followed, the court accepted Jason's amended petition but denied his request for limited discovery. It granted summary judgment, finding that Jason presented no evidence of extrinsic fraud and the *Carter* ruling barred his claim of newly discovered evidence. The court dismissed this action, and Jason appeals.

**II. Scope of Review.**

Our review of an independent action in equity to modify a decree is de novo. *In re Marriage of Hutchinson*, 974 N.W.2d 466, 473 (Iowa 2022). On de novo

review, we give weight to the district court's factual findings although we are not bound by them. *Id.*

### III. Discussion.

Jason appeals both the grant of summary judgment and the denial of his motion for limited discovery. Because the discovery ruling impacts the outcome of summary judgment, we address it first.

### A. Discovery.

On the same day he resisted the defendants' motion for summary judgment, Jason moved to amend his petition to add a claim of extrinsic fraud and asked for a continuance to conduct limited discovery on the extrinsic-fraud claim. Although the district court questioned "the credibility and sincerity of the new extrinsic fraud claim, [which] was made only after the estate raised the issue as a bar to relief in this proceeding," it accepted the amended petition. But the court denied the request for limited discovery, which Jason sought "to ascertain whether additional evidence supporting allegations of extrinsic fraud exist."

If a party opposing summary judgment "cannot present by affidavit facts essential to justify the opposition, the court . . . may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Iowa R. Civ. P. 1.981(6). We review the denial of a continuance under rule 1.981(6) for an abuse of discretion. *Good v. Tyson Foods, Inc.*, 756 N.W.2d 42, 46 (Iowa Ct. App. 2008). "An abuse of discretion consists of a ruling which rests upon clearly untenable or unreasonable grounds." *Struve v. Struve*, 930 N.W.2d 368, 377 (Iowa 2019) (citation omitted). We give the district court wide discretion when reviewing discovery decisions. *Id.*; *see also*

*Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 891 (Iowa 1981) ("When a party claims that he has not been given enough time to gather and submit affidavits in resistance to a motion for summary judgment, it is within the discretion of the trial court whether or not to wait for the affidavits to be furnished.").

The court denied Jason's request for limited discovery, citing the nature of equitable actions to vacate judgment and public policy concerns:

> An equitable action of this type should be an extremely rare event justified only by evidence of extrinsic fraud. Jason did not even allege an extrinsic fraud in his [original] forty-nine-page petition. In light of the standards for filing an equitable action to vacate a judgment, the filing party should have evidence of the extrinsic fraud upfront. The party cannot file the action with the hope to reopen discovery so that extrinsic fraud might be found. If that occurred, the public policy preventing the reopening of judgments absent evidence of extrinsic fraud would be breached. There would be no end to litigation. That would be harmful to successful parties and the efficiency of the court system.

The court also noted that "Jason had a fair opportunity to present his case at the original civil trial" and "a full opportunity through a three-day hearing to present evidence to vacate the civil judgment." It concluded that "[a] party cannot file an action that requires a showing of extrinsic fraud and hope to discover it during discovery" because it "would be a disservice to the interests of justice" and "waste the resources of the parties and the court."

The denial of limited discovery was not clearly untenable or based on unreasonable grounds. Although "generally a nonmoving party should have the opportunity to make discovery prior to hearing and ruling on a motion for summary judgment," rule 1.1981 does not prevent summary judgment before all discovery is completed. *Bitner v. Ottumwa Cmty. Sch. Dist.*, 549 N.W.2d 295, 302 (Iowa 1996). Jason was allowed discovery in the wrongful-death action. That case was

tried to a jury, resulting in the judgment he now seeks to vacate. The district court did not abuse its discretion in denying him additional time for discovery. *See id.* (finding no abuse of discretion in denying a request for a continuance of the summary judgment ruling to conduct discovery when a party has "a full opportunity to conduct discovery prior to the summary judgment hearing").

Because the district court properly exercised its discretion in denying Jason's motion to conduct discovery, we affirm.

### B. Summary Judgment.

Jason contends the district court erred by granting summary judgment on his claims of extrinsic fraud and newly discovered evidence. We review the grant of summary judgment for correction of errors at law. *Union Pac. R.R. Co. v. Drainage Dist. 67 Bd. of Trs.*, 974 N.W.2d 78, 82 (Iowa 2022). "Summary judgment is proper when the undisputed material facts show the moving party is entitled to judgment as a matter of law." *Id.* "A material fact is in dispute if reasonable minds can differ on how to resolve the issue." *Id.*

Iowa Rule of Civil Procedure 1.1012 sets out the grounds by which a court can vacate a final judgment. The court can vacate a final judgment if it was obtained by practice of fraud. Iowa R. Civ. P. 1.1012(2). It can also vacate a final judgment based on newly discovered material evidence that "could not with reasonable diligence have been discovered and produced at the trial, and was not discovered within the time for moving for new trial." Iowa R. Civ. P. 1.1012(6).

A party attempting to vacate a final judgment in an action at law must do so "within one year after the entry of the judgment." Iowa R. Civ. P. 1.1013(1). In the wrongful-death action, Jason twice moved the court to vacate the judgment under

rule 1.1012. The court denied the first motion, which was timely, on the merits. Because Jason brought the second motion more than one year after the final judgment was entered, the court denied it as untimely. *See Hutchinson*, 974 N.W.2d at 474 (noting that a party to a final judgment cannot pursue an action at law to vacate the judgment after the deadline in rule 1.1013 passes).

Iowa courts recognize a procedure for challenging a final judgment after the one-year deadline in rule 1.1013 expires. If more than one year has passed since final judgment, a party can challenge that judgment under the common-law exception to rule 1.1013 by initiating an independent equity action. *Id.* at 474–75. So two years after final judgment in the wrongful-death action, Jason filed this equitable action to vacate the judgment based on extrinsic fraud and newly discovered evidence. The gist of his claims is that Bill conspired with members of law enforcement to conceal evidence from him, which hindered his defense in the wrongful-death action. He alleges this conspiracy to hide or misrepresent evidence was extrinsic fraud. He claims the evidence they concealed is newly discovered evidence. The district court granted summary judgment on both claims, which we review in turn.

**1. Extrinsic Fraud.**

We begin with Jason's claim that the judgment in the wrongful-death action was procured by extrinsic fraud. The supreme court recently reflected on the high bar a party must clear before a court in equity will vacate a final judgment in a separate action:

> The burden that a party bears in attempting in an equity suit to set aside a judgment or decree and to obtain a new trial is a heavy one. First, the alleged fraud must include extrinsic fraud rather than solely

intrinsic fraud. Second, the party would not have been able to discover the fraud within one year by using reasonable or due diligence. Lastly, the party must show the traditional elements of fraud.

*Id.* at 475. The question on summary judgment is whether reasonable minds could disagree as to whether Jason cleared this bar.

In granting summary judgment on Jason's claim of extrinsic fraud, the district court first found Jason failed to show that any fraud could not be discovered by reasonable diligence within one year of the judgment:

His claim of extrinsic fraud is based on the estate working [or] collaborating with DCI, DCI hiding or losing evidence, and DCI and the sheriff intimidating Jason's family. He made these or similar arguments during the civil case (as to the subpoena issue) and the first petition to vacate. While he points to some evidence he learned outside the one-year period, his claims of fraud were known to him within one year after trial. Still, he made no claim of fraud until he filed the amended petition on September 27, 2021.

The court also noted Jason's claims of fraud centered on law enforcement rather than the defendants:

Almost all of Jason's claims are directed against DCI and the sheriff's office. DCI objected to sharing information from its investigative report during the pendency of the civil case. DCI did not give false assurances to either party. DCI received two subpoenas during the course of the civil case. DCI filed a motion to quash the first subpoena, and Jason filed a motion to quash the second subpoena. Both motions were openly addressed by the court. Neither party received the full investigative report, and Jason lost his argument to prevent the more limited production requested by the estate. Jason's argument that the partial production prejudiced him has already been addressed by the courts. *See Carter*, 957 N.W.2d at 634.

Not only was law enforcement investigating Shirley's death throughout the wrongful-death proceedings, it had privilege to protect certain information learned

in its investigation.[2] *See* Iowa Code § 622.11 ("A public officer cannot be examined as to communications made to the public officer in official confidence, when the public interests would suffer by the disclosure."); *State ex rel. Shanahan v. Iowa Dist. Ct. for Iowa Cnty.*, 356 N.W.2d 523, 528 (Iowa 1984) (holding that the district court abused its discretion by ordering that the DCI give civil litigants in the discovery phase of a wrongful-death action access to the DCI investigation file of a double-homicide investigation).

The court found the biggest detriment to Jason's claim is that it concerns intrinsic fraud, not extrinsic fraud. The Iowa Supreme Court recently contrasted the difference between the two:

> Intrinsic fraud is that which inheres in the issues submitted to and decided by the court. We have said intrinsic fraud occurs within the framework of the actual conduct of the trial and pertains to and affects the determination of the issue presented therein. . . . *Examples of intrinsic fraud include* perjury, false or forged instruments, and *concealment or misrepresentation of evidence*.
> On the other hand, extrinsic fraud is some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Extrinsic fraud has also been described as that fraud which keeps a litigant from presenting the facts of his or her case and prevents an adjudication on the merits. *This includes lulling a party into a false sense of security or preventing the party from making a defense.* Classic examples of extrinsic fraud include a bribed judge, dishonest attorney representing the defrauded client, or a false promise of compromise.

*Hutchinson*, 974 N.W.2d at 475–77 (cleaned up) (emphasis added).

---

[2] We note that Jason invoked Iowa Code section 622.11 to quash the subpoena of the DCI file during the wrongful-death action. *Carter*, 957 N.W.2d at 634 (holding that a private citizen lacks standing to invoke the section 622.11 to prevent disclosure of privileged information, yet the State can "voluntarily disclose information that would be covered by the official information privilege").

We agree with the district court's determination that Jason failed to prove extrinsic fraud. As the court noted, this is not a classic case of extrinsic fraud in which the defendants "made assurances or promises that lulled him into a false sense of security or prevented him from presenting a defense." Nor is it a case "in which one party made assurances to the other to prevent them from making a defense." Jason's claims are instead directed against law enforcement, which was not a party to the civil action.[3] Assuming Jason could prove his claims about members of law enforcement, they concern intrinsic fraud.

### 2. Newly Discovered Evidence.

Jason also sought to vacate the civil judgment against him based on newly discovered evidence that he claims shows he was not responsible for Shirley's death. To vacate a final judgment on this ground, a party must show:

> (1) the evidence is newly discovered and could not, in the exercise of due diligence, have been discovered prior to the conclusion of the trial; (2) the evidence is material and not merely cumulative or impeaching; and (3) the evidence will probably change the result if a new trial is granted.

*Carter*, 957 N.W.2d at 637.

The district court granted summary judgment on this claim after determining the issue was litigated and decided by the supreme court's ruling in *Carter v. Carter*, which estops the parties from relitigating it. *See Lemartec Eng'g & Constr.*

---

[3] Jason filed a separate action against the State, alleging that a DCI agent "wrongly inserted himself into the civil case and intentionally, but wrongly, targeted Carter as his mother's killer." *Carter v. State*, No. 21-0909, 2023 WL 3397451, at *1 (Iowa May 12, 2023). The supreme court affirmed the district court's dismissal of the action. *Id.*

*v. Advance Conveying Techs., LLC*, 940 N.W.2d 775, 779 (Iowa 2020). A party is precluded from relitigating an issue when four criteria are met:

> (1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment.

*Id.*

Jason cited newly discovered evidence in two petitions to vacate the judgment in the wrongful-death action. The district court denied the first petition to vacate on the merits. The supreme court affirmed that denial on appeal. *Carter*, 957 N.W.2d at 637. In doing so, it rejected Jason's claim that the evidence he cited in his first petition was newly discovered and could not have been discovered with the exercise of due diligence. *Id.* at 638–39. The supreme court further found that even if the evidence were material and admissible, it would not have changed the result of trial. *Id.* at 639–43. The district court rejected Jason's second petition to vacate the judgment as untimely, but alternatively found that Jason's claims of newly discovered evidence would fail on the merits. The supreme court also affirmed the denial of the second petition to vacate, agreeing the district court lacked jurisdiction to consider it because Jason filed the second petition more than one year after the judgment. *Id.* at 646. The court did not address the alternative basis for the district court's ruling.

Jason challenges the district court's determination that he is precluded from litigating his claim of newly discovered evidence. Although the supreme court held that he failed to show newly discovered evidence in his first petition to vacate, Jason argues his petition in this equity action relies on different evidence. The

district court acknowledged that "Jason has presented some additional evidence in this case that he did not yet have at the time the court heard evidence on his first petition to vacate." But even though the evidence Jason relies on in the equity action is "new" in that it was not raised and considered on the merits previously, the evidence supports the same theories Jason advanced in his first petition to vacate. The supreme court addressed each of those theories and concluded the evidence supporting them did not meet the criteria of "newly discovered" evidence. *See, e.g.*, *id.* at 639 (holding that Jason was aware of one theory before trial but "did not make any attempts to obtain more information from law enforcement or investigate leads for himself" and thus failed to exercise due diligence). The district court found,

> The supreme court decision thoroughly evaluated every aspect of Jason's newly discovered evidence claim. The court made broad findings that his proposed evidence was known to him, that he did not use due diligence to obtain the information before the civil trial, that it was not material because it was inconsistent with his theory at trial, and that most of the evidence was inadmissible hearsay. Those findings govern the decision in this case because he makes the same claims here.

We agree with the district court. Even if Jason is allowed to litigate his claim of newly discovered evidence, it fails on the merits for the reasons the supreme court articulated in *Carter*. Jason cannot show the evidence is newly discovered evidence that could not have been discovered at the time of trial with due diligence, is material and not cumulative or impeaching, and is likely to change the outcome if presented in a new trial. We therefore affirm the grant of summary judgment.

**AFFIRMED.**